**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PUBLIC EMPLOYEES' RETIREMENT          :
SYSTEM OF MISSISSIPPI, Individually and :
On Behalf of All Others Similarly Situated,   :
                                                              :
                    Plaintiff,                         :
                                                              :
          v.                                              :          No. 09-CV-1110 (HB)
                                                              :          **(Dispositive Motion)**
GOLDMAN SACHS GROUP, INC.,            :
GOLDMAN SACHS MORTGAGE             :
COMPANY, GS MORTGAGE SECURITIES :
CORP., GOLDMAN, SACHS & CO., INC.,   :
MCGRAW-HILL COMPANIES, INC.,         :
MOODY'S INVESTORS SERVICE, INC.,     :
FITCH INC., DANIEL L. SPARKS, MARK   :
WEISS, JONATHAN S. SOBEL, GSAA        :
HOME EQUITY TRUST 2006-2, GSAA        :
HOME EQUITY TRUST 2006-3 and           :
GSAMP TRUST 2006-S2,                        :
                                                              :
                    Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOLDMAN SACHS**
**DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Richard H. Klapper
Michael T. Tomaino, Jr.
Harsh N. Trivedi
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for the Goldman Sachs*
*Defendants*

January 20, 2010

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 3

I.  PLAINTIFF LACKS STANDING TO BRING
    SECTION 11CLAIMS FOR ALL BUT ONE OFFERING
    AND SECTION 12(a)(2) CLAIMS FOR ALL OFFERINGS .................................................. 3

    A.  Standing Should Be Decided Now
        and Not Delayed Until Class Certification .................................................................... 3

    B.  The Shelf Registration Statement Does Not
        Provide a Basis for Plaintiff to Establish Section 11
        Standing to Challenge Offerings in Which It Did Not Invest ....................................... 4

    C.  Plaintiff's Purchases from Sellers
        Other than Goldman Sachs Do Not
        Provide a Basis for Section 12(a)(2) Standing ............................................................. 5

II.  THE SAC DOES NOT PLEAD ANY COGNIZABLE DAMAGES ....................................... 6

III. PLAINTIFF'S GENERIC ALLEGATIONS,
     UNTETHERED TO ANY ACTUAL LOANS OR
     DISCLOSURES AT ISSUE, FAIL TO PLEAD A MISREPRESENTATION ....................... 6

    A.  Plaintiff's Conclusory Allegations
        Cannot Survive a Motion to Dismiss ............................................................................ 7

    B.  Regulation AB Defines
        the Goldman Sachs Defendants' Disclosure Obligations .............................................. 8

IV.  PLAINTIFF'S CLAIMS ARE TIME BARRED ................................................................... 9

CONCLUSION ............................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft* v. *Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................ 2, 8

*Atlas* v. *Accredited Home Lenders Hldg. Co.*,
  556 F. Supp. 2d 1142 (S.D. Cal. 2008) ....................................................................... 8

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 2, 8

*Blackmoss Investments Inc.* v. *ACA Capital Hldgs., Inc*,
  No. 07-CV-10528, 2010 U.S. Dist. LEXIS 2899 (S.D.N.Y. Jan. 14, 2010) ................................... 9

*Cent. States Se. & Sw. Areas Health & Welfare Fund* v.
*Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005) ..................................................................................... 3

*Grasty* v. *Amalgamated Clothing & Textile Workers' Union*,
  828 F.2d 123 (3d Cir. 1987) ..................................................................................... 3

*Gustafson* v. *Alloyd Co.*,
  513 U.S. 561 (1995) ............................................................................................. 6

*Hevesi* v. *Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ...................................................................................... 3

*Hicks* v. *Morgan Stanley & Co.*,
  No. 01-CV-10071, 2003 WL 21672085 (S.D.N.Y. July 16, 2003) ................................................ 3

*Hoffman* v. *UBS-AG*,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008) ............................................................................ 3

*Hoxworth* v. *Blinder, Robinson & Co., Inc.*,
  980 F.2d 912 (3d Cir. 1992) ..................................................................................... 3

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  381 F. Supp. 2d 192 (S.D.N.Y 2004) ............................................................................. 6

*In re Blech Sec. Litig.*,
  No. 94-CV-7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ..................................................... 3

*In re Broderbund/Learning Co. Sec. Litig.*,
  294 F.3d 1201 (9th Cir. 2002) ................................................................................... 6

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..................................................................... 4, 8

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98-CV-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) ................................... 3

*In re Dynex Capital, Inc. Sec. Litig.*,
    No. 05-CV-1897, 2009 WL 3380621 (S.D.N.Y. Oct. 19, 2009) ................................... 8

*In re Grand Theft Auto Video Game Consumer Litig.*,
    No. 06-MD-1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006).................................. 3

*In re Initial Pub. Offering Sec. Litig.*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008) ....................................................................... 6

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
    434 F. Supp. 2d 233 (S.D.N.Y. 2006) ....................................................................... 3

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995)................................................................................. 3

*In re Starter Corp. Sec. Litig.*,
    No. 94-CV-0718, 1996 WL 406624 (S.D.N.Y. July 19, 1996)................................... 10

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ..................................................................................... 3

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
    No. 09-MD-1919, 2009 U.S.Dist. LEXIS 99727 (W.D. Wash. Oct. 27, 2009).................. 4, 5-6, 8

*Ingrassia* v. *County of Sullivan*,
    262 F. Supp. 2d 1169 (S.D.N.Y. 2003) ................................................................. 9, 10

*Lewis* v. *Casey*,
    518 U.S. 343 (1996) ............................................................................................... 3

*NECA-IBEW Health & Welfare Fund* v. *Goldman, Sachs & Co., et al.*,
    No. 08-CV-10783 (S.D.N.Y., Cedarbaum, J.) ........................................................... 1

*Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ...................................................................... 9

*Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*,
    No. 08-CV-10446, 2009 WL 3149775 (D. Mass. Sept. 30, 2009).......................... *passim*

**SECURITIES ACT RULES**

Securities Act, Item 303 of Regulation S-K
    17 C.F.R. § 229.303.................................................................................................8, 9

Securities Act, Item 1110 of Regulation AB
    17 C.F.R. § 229.1110.....................................................................................................9

Securities Act, Item 1111 of Regulation AB
    17 C.F.R. § 229.1111................................................................................................8, 9

Securities Act Rule 412
    17 C.F.R. § 230.412.....................................................................................................4

Securities Act Rule 430B
    17 C.F.R. § 230.430B...................................................................................................4

**OTHER AUTHORITIES**

*Securities Offering Reform*,
    Securities Act Release No. 33-8591, 70 Fed. Reg. 44,722 (July 19, 2005) ...................4

The Goldman Sachs Defendants[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss the second amended complaint ("SAC") filed by Public Employees' Retirement System of Mississippi ("Plaintiff").

## PRELIMINARY STATEMENT

Despite amending its complaint a second time rather than respond to defendants' original motions to dismiss, Plaintiff's SAC fails to overcome any of the deficiencies in its prior pleading attempts.  Even with the roadmap of defendants' previous motions, Plaintiff's opposition clings to its position that it has standing to challenge the sufficiency of disclosures in offerings in which it never purchased securities, on the basis of generic allegations about supposed industry practices that have been known for years and that Plaintiff fails to connect to the actual certificates and asset pools at issue here.  The opposition merely presents the identical arguments that were made and expressly rejected in *Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, No. 08-CV-10446, 2009 WL 3149775 (D. Mass. Sept. 30, 2009), and which has led Judge Cedarbaum to dismiss substantially similar complaints relating to indistinguishable offerings, *see NECA-IBEW Health & Welfare Fund* v. *Goldman, Sachs & Co. et. al.*, No. 08-CV-10783 (S.D.N.Y., Cedarbaum, J.).

*First*, Plaintiff's opposition still fails to show how it has standing under Section 11 to challenge offerings of asset-backed securities in which it concededly never purchased certificates (GSAA 2006-2 and 2006-3).  Predictably, Plaintiff tries to forestall the inevitable by urging that its standing should be deferred until consideration of typicality at the class certification stage, and otherwise advocates conflating three separate shelf offerings because they all ultimately derive from a common registration statement.  Standing, however, is a threshold issue, and the law is clear that because each offering involved separate pools of assets, prospectus supplements and disclosures, only plaintiffs

---

[1]      The Goldman Sachs Defendants are The Goldman Sachs Group, Inc. ("GS Group"), Goldman, Sachs & Co. ("Goldman Sachs"), Goldman Sachs Mortgage Company ("GSMC"), GS Mortgage Securities Corp. ("GS Mortgage"), Jonathan S. Sobel, Daniel L. Sparks and Mark Weiss.

that directly purchased in a specific offering have standing as to that offering.  Plaintiff similarly ignores settled law in attempting to manufacture Section 12(a)(2) standing absent any allegations establishing that it directly purchased its GSAMP 2006-S2 certificates from Goldman Sachs.

*Second*, Plaintiff's attempt to sidestep or defer its failure to plead any cognizable damages fails because the offering documents clearly warned investors that the certificates were illiquid, and investors have received all the payments promised to them.  Where (as here) the absence of cognizable damages is evident from the face of the complaint, dismissal is entirely appropriate.

*Third*, Plaintiff's opposition confirms that the SAC's disclosure allegations still rely on nothing more than the type of fact-free pleadings that the Supreme Court found inadequate in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007), and *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009).  As the court held in *Plumbers' Union*, generic allegations about supposed industry-wide issues do not give rise to plausible claims about *specific certificates tied to particular asset pools*.  Nor does Plaintiff's opposition justify effectively abolishing SEC disclosure regulations — which provide that deviations from originators' guidelines must be disclosed only "*to the extent known*" — in favor of a strict liability standard even where the SAC contains no allegation that the Goldman Sachs Defendants were aware of the purported deviations by the unaffiliated originators.

*Finally*, the opposition does not dispute that Plaintiff's claims are based entirely on generic assertions of systemic, industry-wide problems, but nonetheless maintains that those same widely reported problems did not put them on notice of their claims.  If those generic allegations are sufficient to plead a material deficiency in the offering documents, then Plaintiff's claims are plainly time barred by the widespread reports of those very same industry-wide problems well over a year before Plaintiff filed its initial complaint.

## ARGUMENT

**I.    PLAINTIFF LACKS STANDING TO BRING SECTION 11 CLAIMS FOR ALL
BUT ONE OFFERING AND SECTION 12(a)(2) CLAIMS FOR ALL OFFERINGS.**

Plaintiff argues primarily that any determination as to standing should await the class certification stage.  As a fallback, Plaintiff argues that it has standing under Sections 11 and 12(a)(2) to challenge securitizations in which it did not purchase certificates and that involved separate offerings and prospectus supplements, because those separate securitizations derive from a common shelf registration statement.  Plaintiff is wrong on both counts.

### A.    Standing Should Be Decided Now and Not Delayed Until Class Certification.

The opposition's effort to delay determination of standing until class certification has become a common avoidance tactic employed by plaintiffs that have not purchased securities in the offerings they challenge, but one that courts have routinely rejected.[2]  *See Hoffman* v. *UBS-AG*, 591 F. Supp. 2d 522, 529-32 (S.D.N.Y. 2008); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 236 n.8 (S.D.N.Y. 2006); *Plumbers' Union*, 2009 WL 3149775 at *3.  Indeed, the Supreme Court has held that standing requirements cannot be avoided simply because the complaint is brought as a class action.  *Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing.").  Standing is a threshold issue and must be decided now.

---

[2]    In *Hoffman*, Judge Sand held that cases like *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-CV-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000), and *Hicks* v. *Morgan Stanley & Co.*, No. 01-CV-10071, 2003 WL 21672085 (S.D.N.Y. July 16, 2003), "have avoided ruling on standing" by incorrectly examining typicality under Rule 23 — an issue that "has no place in the standing analysis," *Hoffman*, 591 F. Supp. 2d at 532 — and that plaintiffs "cannot meet the injury requirement for [1933 Act] claims relating to funds in which they have not purchased shares," *id.* at 530.  *See also In re Merrill Lynch*, 434 F. Supp. 2d at 236 n.8 (distinguishing *Dreyfus).*  The other cases on which Plaintiff relies similarly do not support delaying the inevitable.  For example, *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995), approved an uncontested class settlement without ever discussing standing.  Other cases do not discuss the securities laws.  *See Grasty* v. *Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) (RICO and labor laws), *cert. denied*, 484 U.S. 1042 (1988); *Cent. States Se. & Sw. Areas Health & Welfare Fund* v. *Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005) (ERISA); *In re Grand Theft Auto Video Game Consumer Litig.*, No. 6-MD-1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) (state consumer protection laws).  And all the cases Plaintiff cites that do discuss the securities laws are factually distinguishable.  *See Hevesi* v. *Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004) (securities fraud action concerning appointment of lead plaintiff, not Section 11 standing); *Hoxworth* v. *Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) (discussing Rule 23 typicality without addressing standing); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) (discussing aftermarket purchasers' standing to assert 1933 Act claims, not Section 11 statutory standing); *In re Blech Sec. Litig.*, No. 94-CV-7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) (discussing Rule 23 typicality without addressing standing).

**B.**     **The Shelf Registration Statement Does Not Provide a Basis for Plaintiff to Establish Section 11 Standing to Challenge Offerings in Which It Did Not Invest.**

Plaintiff once again attempts to bring claims against issuers and underwriters in offerings in which it did not buy securities, by advocating the conflation of three separate securities offerings — by three different issuers, pursuant to three separate prospectuses, with distinct asset pools — into a single "integrated" offering.[3]  (Pl. Opp. at 8.)  Plaintiff's alchemy is unsupported by law.[4]

Plaintiff's opposition has no response to clear law and uniform authorities regulating the shelf registration process.  That process enables qualified issuers to offer securities periodically, pursuant to separate prospectus supplements for each offering.  (Def. MTD at 8-9.)  Plaintiff concedes that the shelf registration statement here is merely "a basic prospectus and three forms of prospectus supplements" (SAC ¶ 59) that need not contain complete information regarding the securities to be offered and is, therefore, not a "final prospectus" under the 1933 Act.  *See* 17 C.F.R. § 230.430B; *Securities Offering Reform*, Securities Act Release No. 33-8591, 70 Fed. Reg. 44,722 at 194-99 (July 19, 2005).  Plaintiff also does not deny that Section 11 liability can attach to a shelf registration statement only when securities are actually offered for sale by means of a "full" prospectus consisting of the "base prospectus" in the registration statement and the later-filed prospectus supplement.  *See* 17 C.F.R. §§ 230.412, 230.430B(f)(2).  Nor does it deny that the generic shelf registration statement contained no specific information about the certificates or loans that provided the collateral on which investors relied for periodic payments as to any of the offerings, or that such critical information was

---

[3]     Plaintiff cites *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008), to support its assertion that "purchasers of securities based on an initial shelf registration statement could serve as representatives for purchasers from other offerings."  (Pl. Opp. at 8.)  As explained in our opening brief, *Countrywide* has been discredited in this District by Judge Rakoff, was expressly limited to its narrow facts by the court in *Countrywide* and is inapposite because it involved offerings by the same corporate issuer (Countrywide) through the same underwriters deriving from a common registration statement.  (Def. MTD at 9 n.6.)

[4]     *See Plumbers' Union*, 2009 WL 3149775 at *3-4 ("the overwhelming weight of authority" holds that a plaintiff lacks Section 11 standing with respect to certificates it did not purchase); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, No. 09-MD-1919, 2009 U.S. Dist. LEXIS 99727, at *56 (W.D. Wash. Oct. 27, 2009) (plaintiffs lacked standing where "[t]here is no named plaintiff who can be deemed a 'person acquiring such security' . . . as required by §11(a), and thus, no named plaintiff has suffered an 'actual injury'").

included only in the three separate prospectus supplements.

Indeed, the opposition does not explain how Plaintiff could have purchased its certificates pursuant to the generic registration statement when the individual trusts had not even been created at the time the shelf registration statement was filed; only after the detailed prospectus supplements were later filed did each trust issue any of its certificates.  Instead, Plaintiff had to purchase its certificates pursuant to the prospectus supplements.

In short, Plaintiff's theory would give rise to claims based on alleged wrongdoing in offerings in which Plaintiff did not participate, against issuers from which it did not purchase certificates and involving collateral assets against which Plaintiff has no claim.  Tellingly, the prospectus supplement pursuant to which Plaintiff purchased its certificates was *not* part of the registration statement for the two offerings in which Plaintiff did not participate, and the prospectus supplements in the two offerings in which Plaintiff did not participate were not part of the registration statement in the offering in which Plaintiff did buy certificates.  Plaintiff's theory that all three offerings constitute an "integrated" offering simply makes no sense.

### C.   Plaintiff's Purchases from Sellers Other than Goldman Sachs Do Not Provide a Basis for Section 12(a)(2) Standing.

Plaintiff attempts to manufacture Section 12(a)(2) standing by asserting — in wholly conclusory fashion — that it purchased its certificates "directly from [Goldman Sachs], as reflected in its certification, filed with [its initial complaint.]"  (Pl. Opp. at 9.)  But the opposition identifies no facts in the SAC to support this assertion, or anything in the certification stating from whom Plaintiff purchased its certificates.  Plaintiff cannot bob-and-weave its way to a Section 12(a)(2) claim.  If it purchased certificates directly from Goldman Sachs, it must allege *facts* demonstrating as much and attest to them in specific language in a certification.[5]  (*See* Def. MTD at 10-11.)

---

[5]      *See Plumbers' Union*, 2009 WL 3149775 at *4 ("If plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so.  An evasive circumlocution does not suffice as a substitute."); *In re Wash. Mut.*,

(*continued on next page*)

## II.     THE SAC DOES NOT PLEAD ANY COGNIZABLE DAMAGES.

Plaintiff now contends that it suffered damages because it sold its certificates for a lower price than it paid for them — presumably in a privately negotiated transaction since no ready market exists. (Pl. Opp. at 7-8, n.6.) The offering documents, however, made clear that: (i) the value of the certificates was not the price in a distressed sale in an illiquid market, but rather the entitlement to receive periodic pass-through payments, as Plaintiff concedes (SAC ¶ 7); and (ii) these payments — and not the ability to sell the certificates at a profit — were the sole benefit that Plaintiff bargained for in purchasing the certificates: "YOUR INVESTMENT MAY NOT BE LIQUID . . . Consequently, you may not be able to sell your certificates readily or at prices that will enable you to realize your desired yield." (Rouse Decl. Ex. D at S-27.)[6] Plaintiff does not contend that any certificates have missed a payment or made a single late payment, and thus Plaintiff has not alleged any cognizable damages under Section 11 or 12(a)(2).[7]

## III.    PLAINTIFF'S GENERIC ALLEGATIONS, UNTETHERED TO ANY ACTUAL LOANS OR DISCLOSURES AT ISSUE, FAIL TO PLEAD A MISREPRESENTATION.

Neither the SAC nor the opposition points to any alleged misrepresentation in the detailed disclosures in the offering documents about the *actual loans* in the asset pool backing the certificates Plaintiff purchased.[8] (Def. MTD at 13-19.) Indeed, Plaintiff does not claim that it knows

---

2009 WL 3517630 at *68 (Section 12(a)(2) standing is limited to those who "purchased the security directly from the issuer of the prospectus"); *Gustafson* v. *Alloyd Co.*, 513 U.S. 561 (1995).

[6]       References to the "Rouse Decl." are to the November 2, 2009 Rouse Declaration accompanying the Goldman Sachs Defendants' Motion to Dismiss the Second Amended Complaint.

[7]       Although Plaintiff does not have to provide detailed allegations as to the amount of its alleged damages, it is well established that when it is apparent on the face of the pleadings that a plaintiff has suffered no damages, the court should dismiss Section 11 and 12(a)(2) claims for failure to plead a required element of the claims. *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 299 (S.D.N.Y. 2008); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 245-46 (S.D.N.Y. 2004); *In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203-05 (9th Cir. 2002).

[8]       Plaintiff suggests that the extensive disclosures cited by the Goldman Sachs Defendants are irrelevant. (Pl. Opp. at 19-20.) But Plaintiff agrees that not only did the offering documents disclose originators' alternative lending programs in detail, they also disclosed significant limitations on assessing borrower credit quality under those programs. For example, the offering documents disclosed that FICO scores — a metric relied upon by originators in evaluating "the relative degree of risk a borrower represents to a lender"— were not developed to "be an accurate predictor of the likelihood of repayment of the related mortgage loans." (Rouse Decl., Ex. D at S-37; Ex. E at S-51 – S-52; Ex. F at S-47.) The offering documents also disclosed that the vast majority of the loans were made pursuant to alternative documentation programs, and that in many

*(continued on next page)*

of any loan in that pool that is anything other than what it was represented to be.  Rather, Plaintiff

argues that it should be allowed to bring this action based on supposed inferences drawn entirely from

generic, conclusory allegations of systemic industry problems.  The court in *Plumbers' Union* has

already dismissed similar pleading tactics, and this Court should do the same.  *See Plumbers' Union*,

2009 WL 3149775 at *4-9.

> **A.      Plaintiff's Conclusory Allegations Cannot Survive a Motion to Dismiss.**

Plaintiff argues that the offering documents did not disclose that originators may

deviate from their loan underwriting programs by issuing loans without full documentation, that

appraisals may deviate from general industry appraisal guidelines and inflate the value of the property,

that the level of credit enhancement could vary, and that the credit ratings assigned by non-party credit

rating agencies were the result of allegedly flawed models and inaccurate loan information.  (Pl. Opp.

at 10.)  Not only does the opposition ignore pages of specific disclosures on these points,[9] but it also

fails to point to a *single* misrepresentation about the *actual loans or certificates at issue here*.

None of Plaintiff's allegations identifies any specific instances of an actual loan in the

asset pools at issue here that allegedly was improperly extended by the originators who made the

loans or any mortgage broker acting on the originators' behalf.  Nor does Plaintiff point to a *single*

loan that was incorrectly appraised or what loan-to-value ratio should have been reported for that loan

in the offering documents if the property had been correctly appraised.  Similarly, Plaintiff alleges no

facts:  (i) supporting an inference that the models the credit rating agencies used to rate the securities

in *these* offerings were flawed; (ii) suggesting what rating would have resulted from models that did

---

cases, "the mortgage loans were also underwritten with a view toward the resale of the mortgage loans in the secondary
mortgage market."  (*Id.*, Ex. D at S-32; Ex. E at S-53; Ex. F. at S-53.)

[9]      Plaintiff relies on public sources for the information it tries to pass off on page 11 of its opposition as facts about the
loan origination practices of New Century, Argent and Countrywide:  (i) a report by the New Century Bankruptcy Examiner;
(ii) a *Miami Herald* article; and (iii) an SEC complaint.  (*See* Pl. Opp. at 11; SAC ¶¶ 64, 66, 70.)  As with its other allegations,
Plaintiff makes no attempt to connect that secondary information to the specific loans or certificates at issue here.  Plaintiff's
reference to Goldman Sachs' settlement with the Massachusetts Attorney General similarly fails to allege any connection to
the loans or certificates at issue (not to mention that the settlement itself contains no allegations of improper conduct or any
admission of wrongdoing by Goldman Sachs, and merely recites areas investigated by the Attorney General).

not include these alleged flaws; or (iii) casting any doubt on the more plausible inference that ratings downgrades on these and similar securities resulted not from allegedly flawed models, but rather from the rating agencies using data from a lengthy period of rising housing prices that turned out to be a poor indicator for loan performance in an unprecedented housing downturn.

After *Twombly* and *Iqbal*, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570; "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 129 S. Ct. at 1949.  Even with the extensive loan-level information provided in the offering documents, it is noteworthy that Plaintiff cannot identify even a *single* loan that was extended by deviating from a disclosed underwriting guideline or based on an inflated appraisal, or had an excessively high loan-to-value ratio.  Without identifying how many (or which) loans allegedly were extended by deviating from guidelines, how many loans were improperly appraised and what a "proper" appraisal would have been, and in what way the rating models were flawed and what a proper rating opinion would have been, Plaintiff relies entirely on guilt by industry association, an approach that fails under the Supreme Court's plausibility standards.[10]  (Def. MTD at 14 (citing *Plumbers' Union*, 2009 WL 3149775 at *9 (dismissing claims for failure to allege a "factual basis").)

## B.  Regulation AB Defines the Goldman Sachs Defendants' Disclosure Obligations.

Plaintiff does not dispute that the Goldman Sachs Defendants originated none of the mortgages in the asset pools underlying the certificates, nor that Section 1111 of Regulation AB (17 C.F.R. § 229.1111) requires disclosure only of deviations from loan underwriting guidelines "to the extent known."  (Pl. Opp. at 17-18.)  Nonetheless, the opposition seeks effectively to override Regulation AB by arguing that its literal application would add a "scienter" requirement to Sections 11

---

[10]      As explained in the Goldman Sachs Defendants' opening brief, Plaintiff's reliance on generic news articles is in sharp contrast to the allegations in *Dynex*, which were supported by specific, factual statements from identifiable, confidential witnesses as well as actual reports released by defendants regarding the particular loans at issue.  (Def. MTD at 14 n.9.)  *See In re Dynex Capital, Inc. Sec. Litig.*, No. 05-CV-1897, 2009 WL 3380621, at *4, 7 (S.D.N.Y. Oct. 19, 2009).  The other cases plaintiff mentions — *Atlas* v. *Accredited Home Lenders Hldg. Co*., 556 F. Supp. 2d 1142 (S.D. Cal. 2008), *In re Wash. Mut., Inc.*, 2009 U.S. Dist. LEXIS 99727, and *Countrywide*, 588 F. Supp. 2d 1132 — were similarly supported by specific, factual statements from identifiable, confidential witnesses.

and 12(a)(2).  (Pl. Opp. at 16-18.)  To the contrary, rather than seeking to impose a scienter requirement or alter statutory disclosure requirements, the Goldman Sachs Defendants simply invoke the well established rule that there can be no liability for an omission unless the securities laws impose an obligation to disclose that information, as Judge Sweet just held in analogous circumstances.[11]

The offering documents correspondingly made clear that the Goldman Sachs Defendants had not originated any of the mortgages and provided no warranty as to originators' adherence to their guidelines.  Permitting a strict liability Section 11 or 12(a)(2) claim nonetheless based on alleged unknown deviations by unaffiliated originators would read Item 1111 out of existence, and would force issuers and underwriters either to stop purchasing and securitizing loans they did not originate, or to conduct the type of comprehensive diligence of originators' deviations from their underwriting standards that the SEC determined would be inappropriate in promulgating Item 1111.  Because the SAC contains no allegation that the Goldman Sachs Defendants "knew" but failed to disclose any changes or exceptions to those originators' guidelines, Plaintiff has failed to plead a claim under Section 11 or 12(a)(2) based on any such deviations.[12]

## IV.   PLAINTIFF'S CLAIMS ARE TIME BARRED.

Plaintiff's position as to the timeliness of its claims continues its effort since the start of this case to have it both ways.  On the one hand, Plaintiff urges that its generic allegations based on

---

[11]    Judge Sweet recently dismissed a complaint asserting claims under Sections 11, 12(a)(2) and 15 of the 1933 Act for failing to "plead, with some specificity, facts establishing that the defendant had actual knowledge of the purported trend," where the applicable SEC regulations required defendants only to disclose "known trends or uncertainties." *Blackmoss Investments Inc.* v. *ACA Capital Hldgs., Inc.*, No. 07-CV-10528, 2010 U.S. Dist. LEXIS 2899, at *23-24 (S.D.N.Y. Jan. 14, 2010).  Judge Sweet disregarded the plaintiff's comparable "scienter" argument, stating that "[w]hile it is true that Section 11 claims generally do not require pleading scienter," that is not applicable when an SEC regulation requires "actual knowledge." *Id.* at *24.  Judge Sweet's reasoning was based on the plain language of Item 303 of Regulation S-K (17 C.F.R. § 229.303), which, like Item 1111 of Regulation AB, requires disclosure of certain information only to the extent "known." *See id.* at *23; *see also Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008) (duty to disclose depends on the securities laws and regulations).  The *Blackmoss* opinion is attached as Exhibit A to the declaration of Harsh N. Trivedi accompanying this reply.  It is well established that in ruling on a motion to dismiss, the Court may consider publicly available court materials.  *Ingrassia* v. *County of Sullivan*, 262 F. Supp. 2d 116, 119 (S.D.N.Y. 2003).

[12]    Plaintiff suggests that the Goldman Sachs Defendants did not comply with Item 1110 of Regulation AB. (Pl. Opp. at 18.)  All Item 1110 requires is a general "description of the originator's origination program" if that originator "is expected to originate[ ] 20% or more of the pool assets."  17 C.F.R. § 229.1110.  As Plaintiff acknowledges, such descriptions were clearly disclosed in the offering documents.  (Pl. Opp. at 10.)

industry issues should be sufficient to imply material deficiencies in the Goldman Sachs Defendants'
disclosures about certificates backed by specific asset pools.  On the other hand, the opposition
maintains that the same generic allegations were insufficient to put Plaintiff on notice of its claims
because the public sources do not specifically mention the certificates or the Goldman Sachs
Defendants.  (Pl. Opp. at 22.)  As Plaintiff acknowledges, the allegations of systemic practices
underlying these claims *were* disclosed in the press well more than a year before Plaintiff filed suit.[13]
(*Id*; Def. MTD at 22-25 & Appendix 1.)  Simply put, if such generic allegations of industry problems
are enough to state a claim, then the same allegations were widespread and known for years before
Plaintiff filed suit, making the claims time barred.

## CONCLUSION

For the foregoing reasons, Plaintiff's SAC should be dismissed in its entirety, with
prejudice.[14]

Dated: January 20, 2010                          Respectfully submitted,

                                                 /s/  Richard H. Klapper
                                                 Richard H. Klapper
                                                 Michael T. Tomaino, Jr.
                                                 Harsh N. Trivedi
                                                 SULLIVAN & CROMWELL LLP
                                                 125 Broad Street
                                                 New York, New York  10004
                                                 Telephone:  (212) 558-4000
                                                 Facsimile:  (212) 558-3588
                                                 *Counsel for the Goldman Sachs*
                                                 *Defendants*

---

[13]     As Plaintiff concedes (Pl. Opp. at 21 n.18 & 19), the Court may consider the public information attached as
Appendix 1 to the Goldman Sachs Defendants' memorandum of law in support of their motion to dismiss the SAC to
establish when Plaintiff was on inquiry notice of its possible claims without converting this motion to dismiss into a
motion for summary judgment.  *See Ingrassia*, 262 F. Supp. at 119.

[14]     Pursuant to the Court's Individual Practices Rule 4.B, Plaintiff should be given "no further opportunities to
amend."  Indeed, courts have routinely held that when it is evident that a plaintiff "had ample opportunity to specify [its]
claims" in a prior complaint, "leave to further amend the complaint will not be allowed."  *In re Starter Corp. Sec. Litig.*,
No. 94-CV-0718, 1996 WL 406624, at *7 (S.D.N.Y. July 19, 1996).