UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and On
Behalf of All Others Similarly Situated,

                      Plaintiff,

                                                                    Civil Action No. 09-CV-1110 (HB)

        -against-

GOLDMAN SACHS GROUP, INC., *et al.*,

                      Defendants.
------------------------------------------------------------X


# THE RATING AGENCY DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

Joshua M. Rubins
James J. Coster
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200

*Attorneys for Defendant Moody's Investors Service, Inc.*

Floyd Abrams
S. Penny Windle
Adam Zurofsky
Tammy L. Roy
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendant The McGraw-Hill Companies, Inc.*

Martin Flumenbaum
Roberta Ann Kaplan
Andrew J. Ehrlich
Tobias J. Stern
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Defendant Fitch, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .....................................................................................................................1

I.   PLAINTIFF'S § 11 CLAIMS AGAINST THE RAs SHOULD BE DISMISSED .............1

    A.   No Section 11 Liability Can Be Imposed Based on the RAs' Ratings ....................2

    B.   The Consent Requirements of § 11(a)(4) Preclude Plaintiff's Claims ....................2

    C.   The RAs Were Not "Underwriters" Of The Securities They Rated ........................3

II.  NO "MISSTATEMENTS" ARE ALLEGED REGARDING THE RAs' RATINGS .........6

III. PLAINTIFF IDENTIFIES NO BASIS FOR § 15 LIABILITY ..........................................8

# TABLE OF AUTHORITIES

**Cases**

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009) .................................................................................... 8n

*In re Adelphia Communications Corp. Sec. Litig.*, 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ............................................................................... 4n, 6n

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ....................... 10

*Ashcroft* v . *Iqbal*, 129 S. Ct. 1937 (2009) ............................................................. 8

*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520 (6th Cir. 2007) ................................................................................................. 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 352 F. Supp. 2d 429 (S.D.N.Y. 2005) ............................................................................................... 10

*Gabriel Capital, L.P.* v. *Natwest Fin., Inc.*, 122 F. Supp. 2d 407 (S.D.N.Y. 2000) ............................................................................................... 8

*Harden* v. *Raffensperger, Hughes & Co.*, 65 F.3d 1392 (7th Cir. 1995) ................ 4-6, 5n

*In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) ........................................................................................................... 9

*Jefferson County School District No. R-1* v. *Moody's Investor's Services, Inc.*, 175 F.3d 848 (10th Cir. 1999) ................................................................ 7

*Kalin* v. *Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) ............................... 8

*Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) ....................... 2

*In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999) ....................... 9

*McFarland* v. *Memorex Corp.*, 493 F. Supp. 631 (N.D. Cal. 1980) ....................... 3, 3n-4n, 5n

*Owens* v. *Gaffken & Barriger Fund, LLC*, 2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009) ...................................................................................... 8

*Plumbers' Union Local No. 12 Pension Fund* v. *Normura Asset Acceptance Corp.*, 2009 WL 3149775 (D. Mass. Sept. 30, 2009) .................... 6-7

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ....................... 1, 6

*In re Refco, Inc. Sec. Litig.*, 2008 WL 3843343 (S.D.N.Y. Aug. 14, 2008) ........... 3-4, 3n-4n, 5n, 6n

**Cases**

*Rich* v. *Maidstone Financial, Inc.*, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ........................................................................................... 9

*SEC* v. *Allison*, 1982 WL 1322 (N.D. Cal. Aug. 11, 1982) .................................... 4n

*SEC* v. *Kern*, 425 F.3d 143 (2d Cir. 2005) ............................................................. 4n

*SEC* v. *Van Horn*, 371 F.2d 181 (7th Cir. 1966) ..................................................... 4n

*SEC* v. *Universal Express, Inc.*, 475 F. Supp. 2d 412 (S.D.N.Y. 2007) ................ 4n

*Sloane Overseas Fund, Ltd.* v. *Sapiens International Corp.*, 941 F. Supp. 1369 (S.D.N.Y. 1996) ....................................................................... 9

*Special Situations Fund, III, L.P.* v. *Cocchiola*, 2007 WL 2261557 (D.N.J. Aug. 3, 2007)..................................................................................... 4n

*In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096 (D. Nev. 1998) .............. 9-10

*Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083 (1991) .............................. 7, 7n

*In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003) ............................................................................................. 9

*In re Washington Mutual Sec., Deriv. & ERISA Litig.*, 2009 WL 3517630 (W.D. Wash. Oct. 27, 2009) ............................................................. 7n

**Regulations**

SEC Regulations
    Rule 436(g), 17 C.F.R. § 230.436(g) (2009) ..................................................... 1-2, 6

**Rules**

Fed. R. Civ. P.
    9(b)................................................................................................................. 8n

**Statutes**

Securities Act of 1933
    § 11, 15 U.S.C. § 77k (2006) ........................................................................... 1-6
    § 15, 15 U.S.C. § 77o (2006) ........................................................................... 8-10

**Other Authorities**

NASD Manual (CCH) (1994)................................................................................. 5, 5n

Preliminary Note to SEC Rule 144, 17 C.F.R. § 230.144 ....................................... 4n

SEC Release No. 33-6336, 46 F.R. 42024 (Aug. 18, 1981) ................................... 2

Defendants The McGraw-Hill Companies, Inc., Moody's Investors Service, Inc. and Fitch Ratings, Inc. (collectively, the "RAs") respectfully submit this reply brief in support of their motion to dismiss the Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

As plaintiffs have attempted to do in similar cases before this Court, Lead Plaintiff Public Employees' Retirement System of Mississippi ("Plaintiff") seeks here to expand the reach of the Securities Act of 1933 (the "1933 Act") to treat credit rating agencies as "underwriters" under the Act. Yet, again, and as clearly demonstrated in Plaintiff's Opposition Brief ("Pl. Opp."), Plaintiff cannot cite even *one* case in which an entity that performed the activities the RAs are alleged to have performed here was determined to fall within this well-defined term. Indeed, Plaintiff does not cite any case in which "underwriter" liability has been imposed on an entity, such as the RAs, that neither purchased, sold or distributed securities, nor was named to investors as endorsing the truth of the statements made in the registration statement.

Instead, Plaintiff urges the expansion of the term "underwriter" to cover essentially all persons involved in a registered offering, despite the well-settled requirement that an "underwriter" must participate in the *distribution* of securities. Plaintiff seeks to side-step this requirement by arguing that if an entity performed some activity in connection with the creation of the securities, it was therefore involved in the securities' eventual "distribution" and thus qualifies as a § 11 "underwriter." Such a sweeping "but for" theory, if accepted, would expand the term "underwriter" — contrary to Judge Lynch's opinion in *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 629 (S.D.N.Y. 2007) ("*Refco I*") — into one of "unlimited applicability." It should be rejected, as should Plaintiff's equally tortured effort to characterize the RAs as "control persons."

## ARGUMENT

I. **PLAINTIFF'S § 11 CLAIMS AGAINST THE RAs SHOULD BE DISMISSED**

In their Opposition Brief, Plaintiff confirms that its claims are, at their core, a challenge to the RAs' ratings. (Pl. Opp. at 16-17). Yet, Plaintiff concedes, as it must, that pursuant to Rule 436(g), the RAs' ratings are immune from liability under § 11(a)(4) of the 1933 Act. (Pl. Opp. at

1

12-13). Plaintiff nevertheless argues that it can sue the RAs, including in connection with their ratings, under § 11(a)(5). Plaintiff's argument fails for three independent reasons: 1) Rule 436(g) precludes *all* § 11 claims based on the credit ratings of an NRSRO; 2) Plaintiff's § 11 claims are precluded by the consent requirements of § 11(a)(4); and 3) the activities the RAs allegedly performed here do not as a matter of law constitute "underwriting."

### A.   No Section 11 Liability Can Be Imposed Based on the RAs' Ratings

Pursuant to Rule 436(g), 17 C.F.R. § 230.436(g)(1), the credit ratings of NRSROs, such as the RAs, are absolutely immune from liability under § 11. Plaintiff argues that Rule 436(g) is irrelevant here because it does not apply to claims under § 11(a)(5). (Pl. Opp. at 12). There is no such limitation on Rule 436(g). Moreover, Plaintiff's theory would render Rule 436(g) meaningless. As explained in the RAs' opening brief ("RAs Br."), the explicit and unambiguous purpose of Rule 436(g) is to "exclude any [NRSRO] whose security rating is disclosed in a registration statement from civil liability under Section 11." SEC Release No. 33-6336, 46 F.R. 42024, 42024, 42026 (Aug. 18, 1981); RAs Br. at 3-4. If, as Plaintiff appears to urge, a rating agency could be held liable under § 11(a)(5) by virtue of its ratings – but, as Plaintiff concedes, not under § 11(a)(4) – Rule 436(g) would serve no purpose. Indeed, a plaintiff could end-run both the consent requirements of § 11(a)(4) (discussed further below) and Rule 436(g) by styling their claim, as Plaintiff does here, as one under § 11(a)(5). Such a construction of § 11, and the SEC regulations promulgated thereunder, cannot be countenanced. *See Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147, 156 (2d Cir. 2007) (courts "avoid interpreting a regulation in a way that renders one of its provisions meaningless").

### B.   The Consent Requirements of § 11(a)(4) Preclude Plaintiff's Claims

Based on the activities Plaintiff alleges the RAs performed here, it is a prerequisite to any possible § 11 liability that the RAs have been named to investors as having prepared or certified the registration statement and consented to being so named. *See* RAs Br. at 5-7. Plaintiff asserts that it is not suing the RAs as experts under § 11(a)(4), but as "underwriters" under § 11(a)(5). (Pl. Opp. at 13 n.7). Plaintiff misses the point; it cannot simply bypass the consent requirement of

§ 11 by characterizing the RAs' conduct as "underwriting" and its claims as ones under § 11(a)(5). This is because § 11(a)(4) not only provides for liability, but also provides clear limitations on that liability for certain defendants, *i.e.,* "experts." *See McFarland* v. *Memorex Corp.*, 493 F. Supp. 631, 642-43 (N.D. Cal. 1980) ("[S]ection 11(a)(4) limits liability."). The activities Plaintiff claims the RAs performed here, *i.e.,* providing opinions, drafting documents and advising on aspects of the transaction,[1] are activities that courts evaluate under the "expert" provision of § 11(a)(4). *See* RAs Br. at 5-7. Thus, to state a viable § 11 claim, Plaintiff was required to allege that the RAs were named as having prepared some allegedly misleading portion of the registration statement and consented to being so named. Plaintiff does not – and cannot – make such an allegation. Plaintiff's § 11 claims against the RAs therefore must fail for this reason as well.

### C. The RAs Were Not "Underwriters" Of The Securities They Rated

Plaintiff's attempted end run around Rule 436(g) and the consent requirements of § 11 independently fails because, as a matter of law, Plaintiff does not – and cannot – adequately allege that the RAs were "underwriters" of the securities they rated. Plaintiff asserts that its allegations are "plausible" (Pl. Opp. at 6-7), but ignores that, even taking all of its allegations as true, the activities that the RAs allegedly engaged in here simply do not fit within the long-standing definition of an "underwriter." Moreover, Plaintiff's assertion that the RAs' alleged actions had the "qualifying indicia" of underwriters (Pl. Opp. at 11) is baseless. Not only are the RAs' alleged activities far removed from the "qualifying indicia" of underwriting, it would require a radical and unwarranted expansion of the settled terms of § 11 to force the RAs into the definition of an "underwriter."

An underwriter is "a term generally understood to refer to those who undertake actively to sell . . . securities." *In re Refco, Inc. Sec. Litig.*, 2008 WL 3843343, at *3 n.5 (S.D.N.Y. Aug. 14, 2008) ("*Refco II*").[2] *See also id.* at *4 ("[T]he definition of 'underwriter' is intended to sweep up

---

[1] While the RAs dispute the factual allegations of the SAC, they have assumed as true, for the purposes of this motion only, Plaintiff's allegations regarding the RAs' role in the offerings at issue. As demonstrated here and in the RAs' Opening Brief, however, such allegations do not – as a matter of law – trigger liability under the 1933 Act.

[2] Despite Plaintiff's attempts to distinguish *Refco* and the other cases cited by the RAs in their opening brief (*see* Pl. Opp. at 10-11), Plaintiff has alleged here nothing more than what these courts have found insufficient, *i.e.*, that the

all – but only – those who play a role in the distribution of the securities.").[3]  Plaintiff provides no factual basis whatsoever to support a conclusion that the RAs played any role at all in the distribution of securities, relying instead on 1) the RAs' *exempted* ratings (the provision of which, as discussed above, was at most a § 11 expert activity – not underwriting); and 2) allegations that the RAs advised on aspects of the transaction and played a role in *creating* the securities.  Such alleged activities do not constitute underwriting.  Significantly, not one of the cases cited by Plaintiff in support of its "underwriter" theory held that an entity that allegedly "structured" the transaction, or played any similar role in the *creation* of the securities, was an "underwriter" of the offering or subject to liability under § 11.  Indeed, in all but one of the cases cited by Plaintiff in which an entity was determined to be an "underwriter," the entity had in fact purchased, sold or distributed the securities at issue.[4]  The remaining case, *i.e.,* the case on which Plaintiff's entire theory thus rests, is *Harden* v. *Raffensperger, Hughes & Co.,* 65 F.3d 1392 (7th Cir. 1995).  (Pl. Opp. at 8-9).  Yet, the entity at issue in *Harden* was not alleged to have had merely a role in the creation of the securities at issue; rather *Harden* "dealt with an entirely different animal,"[5] *i.e.* the "Qualified Independent Underwriter" ("QIU").

A QIU is an entity that, *inter alia*, is legally required (as an "underwriter" would be) to conduct the due diligence on a transaction in situations where the actual underwriter is an affiliate

---

RAs performed alleged "behind the scenes" activities in the offering, but "took no part in the distribution of the bonds."  *Refco II*, 2008 WL 383343, at *4; *McFarland*, 493 F. Supp. at 631, 644.

[3]  This requirement is also reflected in § 11(e), which limits an underwriter's liability to "the total price at which the securities underwritten by him and distributed to the public were offered to the public."  15 U.S.C. § 77k(e).  *See also* Preliminary Note to S.E.C. Rule 144, 17 C.F.R. § 230.144.

[4]  *See SEC* v. *Kern*, 425 F.3d 143, 152 (2d Cir. 2005) (entities were "underwriters" where they had "acquired securities . . . with a view to distribution"); *SEC* v. *Van Horn*, 371 F.2d 181, 188 (7th Cir. 1966) (securities dealer and its officers were "underwriters" where "they participated, both directly and indirectly, in the sale of . . . stock" to the public); *Special Situations Fund, III, L.P.* v. *Cocchiola*, 2007 WL 2261557, at *6, *8-*9 (D.N.J. Aug. 3, 2007) (deciding on summary judgment that certain defendants that had purchased and sold shares were "underwriters" where all defendants had been listed in prospectus "as underwriters who had each agreed to purchase" shares); *SEC* v. *Universal Express, Inc.*, 475 F. Supp. 2d 412, 430, 432 n.13 (S.D.N.Y. 2007) (individual was an underwriter where there was "no dispute that [he] offered and sold millions of shares" of stock); *SEC* v. *Allison*, 1982 WL 1322, at *3 (N.D. Cal. Aug. 11, 1982) (defendants were "underwriters" where they "directly participated in the offers and sales of the securities: they arranged for public trading to commence through market makers, brokers, and transfer agents; they stimulated demand through advertisements, research reports, and television promotions; and, through these efforts, they were able to sell a substantial amount of stock . . . to the public").

[5]  *In re Adelphia Communications Corp. Sec. Litig.*, 2007 WL 2615928, at *8-*9 (S.D.N.Y. Sept. 10, 2007).

of the issuer.  *NASD Manual* (CCH) ¶ 1883, Sch. E, § 3(c)(1) (1994).  The QIU "thus performs the same protective function envisioned by the 1933 Congress when it defined [the term underwriter]."  *Harden*, 65 F.3d at 1403.  To qualify as a QIU, the NASD requires that the entity agree "to undertake the legal responsibilities and liabilities of an underwriter under the [1933 Act], specifically including those inhere in Section 11 thereof."  *NASD Manual* (CCH) ¶ 1882, Sch. E, § 2(o)(7).[6]  Moreover, where a QIU is used, this fact must be disclosed to investors in the "underwriting section of the registration statement," along with "the name of the member acting as [QIU], if any, and that such member is assuming the responsibilities of acting as a [QIU] in pricing the offering and conducting due diligence."  *NASD Manual* (CCH) ¶ 1884, Sch. E, § 4(b).  Thus, nothing in *Harden* changes the fact, discussed in the RAs' Opening Brief (pp. 7-10), that it is those entities "identified to the public as endorsing the truth of representations contained [in the registration statement]" that are the subject of § 11.[7]

The Seventh Circuit ultimately concluded that the QIU at issue "would qualify as an underwriter in this case" because "[i]ts role as [a QIU] was 'necessary to the distribution of [the] securities.'"  *Harden*, 65 F.3d at 1401 (citation omitted).  Specifically, the Seventh Circuit held:

> The [QIU] . . . performs the same protective function envisioned by the 1933 Congress when it defined [the term underwriter] . . . .  Indeed, the [QIU] 'participates' in the issues through its voluntary and explicit assumption of the liability usually assumed by the underwriter.  That assumption of liability is an important factor in maintaining investor confidence.  Accordingly, we hold that [the QIU] was subject to [§] 11 liability.  *Id.* at 1403.

Plaintiff's exclusive focus on the phrase "necessary to the distribution" in the *Harden* opinion

---

[6] As stated in the NASD Manual in effect when *Harden* was decided, both the NASD and SEC agree that "the full responsibilities and liabilities of an underwriter under the [1933 Act] attach to a '[QIU].'"  *Harden*, 65 F.3d at 1399 (citing *NASD Manual* (CCH) ¶ 1882, Sch. E, § 2(o)).  Nonetheless, the SEC directed the NASD "to specifically require, should there be any doubt as to the legal attachment of [§ 11] responsibilities and liabilities, that [QIUs] specifically undertake those responsibilities and liabilities."  *Id.* at 1399 (citation omitted).

[7] Plaintiff asserts that, unlike in *McFarland* and *Refco II*, the RAs here had the "qualifying indicia" of underwriters because they "were prominently and repeatedly identified in the Offering Documents."  (Pl. Opp. at 11).  As the Offering Documents make clear (*see, e.g.,* Declaration of Floyd Abrams, Ex. 2 at S-155), however, the RAs were identified solely as credit rating agencies that would provide opinions on one topic: "the likelihood of the receipt by a certificateholder of distributions on the mortgage loans."  This could hardly be more different than identifying an entity as endorsing the truth of every representation in the Registration Statements.  There is ***no*** allegation that the RAs were identified to the public in this manner, nor could there be.

ignores the unique role of the QIU, which was hired as an underwriter, paid as an underwriter, voluntarily and explicitly assumed the liability of an underwriter, performed due diligence as an underwriter would and was publicly presented as an underwriter.  *See Harden*, 65 F.3d at 1397-1403.  The RAs did not do any of those things and Plaintiff does not allege otherwise.

Thus, the *Harden* opinion does *not* stand for the proposition urged by Plaintiff – *i.e.*, that all entities that performed activities allegedly "necessary" to the creation of the securities are somehow transformed into underwriters.  This unsupported "but for" interpretation of § 11(a)(5) would radically enlarge the reach of the 1933 Act, extending the term "underwriter" to every third-party professional that could be said to have contributed in some way to the creation of the securities.  No court has ever applied *Harden* in the manner Plaintiff urges here, and there is simply no basis to do so.[8]  Indeed, as Judge Lynch has made clear, the term "underwriter" is *not* "a term of unlimited applicability that includes anyone associated with a given transaction."  *Refco I*, 503 F. Supp. 2d at 629.  Plaintiff's § 11 claims must accordingly fail.

## II.   NO "MISSTATEMENTS" ARE ALLEGED REGARDING THE RAs' RATINGS

As noted above, Plaintiff continues to base its claims in large part on the RAs' ratings.  *See also* Pl. Opp. at 16-17.  Rule 436(g) flatly precludes any such claim.  (RAs Br. at 2-3).  An NRSRO's ratings are simply not part of the registration statement for purposes of § 11 liability.  Each of Plaintiff's remaining arguments is also without merit.[9]

First, Plaintiff asserts that the Defendants can be held liable for allegedly omitting certain information about the RAs' rating models and assumptions.  (Pl. Opp. at 16). Yet, Plaintiff's allegations of outdated rating models and assumptions rely exclusively on after-the-fact events occurring in 2008 involving hindsight criticisms of the RAs.  As noted in the RAs' opening brief, such hindsight allegations were recently held insufficient by another federal court in dismissing similar 1933 Act claims with prejudice.  *See Plumbers' Union Local No. 12 Pension Fund* v.

---

[8]  Courts, indeed, have limited the holding in *Harden* to the narrow situation presented there.  *See Adelphia*, 2007 WL 2615928, at *9; *Refco II*, 2008 WL 3843343, at *4 n.6.

[9]  The RAs also join in the arguments made in the reply brief filed by the Goldman Sachs Defendants.

*Nomura Asset Acceptance Corp.*, 2009 WL 3149775, at *8 (D. Mass. Sept. 30, 2009).  Plaintiff makes a tortured attempt to distinguish *Nomura*, noting that here "Lead Plaintiff's allegations are not centered on the accurate reporting of ratings."  (Pl. Opp. at 17-18).  Yet, the same was true in *Nomura*.  *See Nomura*, 2009 WL 3149775, at *8 ("[P]laintiffs do not allege that defendants inaccurately report the actual ratings awarded[.]").  In fact, plaintiffs' claims in *Nomura* regarding alleged ratings misstatements and omissions were virtually identical to Plaintiff's claims here.  *See*, *e.g.*, *id.* ("According to plaintiffs, the ratings . . . were based on: (1) outdated models applicable only to years prior to 2000; (2) lowered ratings criteria; and (3) inaccurate loan information.").  The reasoning and holding of *Nomura* are thus particularly instructive here.

Second, Plaintiff's contention that the RAs' ratings are not opinions, but "factual statements," is plainly incorrect.  (Pl. Opp. at 19-21).  It is well-established that a "credit rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors." *See Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (holding that there was no basis to "conclude that the credit rating itself communicates any provably false factual connotation" that could render it actionable); *see also Jefferson County School District No. R-1* v. *Moody's Investor's Services, Inc*., 175 F.3d 848, 856 (10th Cir. 1999). As noted in the RAs' opening brief, to trigger liability for the expression of an opinion, Plaintiff were required to plead that the RAs did not subjectively believe their rating opinions at the time they were issued.  *See Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083, 1095 (1991).[10]  Yet,

---

[10] This requirement is also set forth in the very cases that Plaintiff cites in opposition.  *See, e.g.,* Pl. Opp. at 20, citing *In re Washington Mutual Sec., Deriv. & ERISA Litig*., 2009 WL 3517630, at *21 (W.D. Wash. Oct. 27, 2009) (finding "persuasive" a case that determined that "the subjective falsity standard applied to [a] fairness opinion, but not to the certification [by accountant]").  The statements at issue in *Wash. Mut.*, however, were not opinions, but verifiable factual statements regarding, *inter alia*, whether the auditor-defendant had employed certain accounting standards as it had represented.  Attempting to avoid the *Virginia Bankshares* requirements relating to opinions, Plaintiff argues that the issue of whether the RAs' "analyses of the underlying mortgages took place is a verifiable factual statement."  (Pl. Opp. at 20).  Yet, nowhere does the SAC allege that the RAs did not perform *any* analysis; rather, the SAC is based on Plaintiff's after-the-fact assertion that the RAs should have employed a *different* analysis in deriving their rating opinions.  *See, e.g.,* SAC ¶¶ 148-49 (asserting that "out-dated" models were used when new, allegedly better models were developed).  *Washington Mutual* is thus inapposite.

the SAC affirmatively pleads the opposite, disclaiming that it alleges "fraud on the part of any Defendant."[11] (SAC ¶ 2). Plaintiff thus has not met, and cannot meet, its burden.

Finally, even if Plaintiff had adequately alleged any material undisclosed facts, it has not adequately pled, as it must, that the RAs had any duty to disclose this allegedly omitted information. Plaintiff's attempt to create a "duty" falls short. Plaintiff asserts that once Defendants spoke on the topic of ratings, a duty arose to provide "all information necessary to make the statements about those structures and ratings not misleading." (Pl. Opp. at 18). Plaintiff's argument, however, ignores the fact that the RAs did *not* speak; not one statement in the registration statements (beyond the exempted ratings) is attributable to the RAs. Plaintiff thus can only be attempting to impose liability here on the RAs for statements they did not make.

### III.  PLAINTIFF IDENTIFIES NO BASIS FOR § 15 LIABILITY

Even assuming, *arguendo*, that Plaintiff has adequately pleaded a primary violation, it offers no support for its profoundly implausible attempt to stretch the definition of a § 15 "control person" beyond recognition to include the RAs. Aware that it does not, and cannot, offer relevant factual allegations, Plaintiff contends that "naked allegations" of "control" are sufficient. (Pl. Opp. at 13-15). Plaintiff simply ignores *Iqbal*'s holding that a complaint fails if it tenders "naked assertion[s] devoid of further factual enhancement." *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (alteration in original) (internal quotation marks omitted); *see also Owens* v. *Gaffken & Barriger Fund, LLC*, 2009 WL 3073338, at *12 (S.D.N.Y. Sept. 21, 2009). Indeed, even before *Iqbal*, the courts of this District held that a plaintiff must allege "facts supporting a reasonable inference of control," *Gabriel Capital, L.P.* v. *Natwest Fin., Inc.*, 122 F. Supp. 2d 407, 426-27 (S.D.N.Y. 2000); *accord Kalin* v. *Xanboo, Inc.*, 526 F. Supp. 2d 392, 405 (S.D.N.Y. 2007), that

---

[11] Plaintiff cites *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009) for the proposition that credit ratings can be actionable misstatements. (Pl. Opp. at 17; *see also id.* at 21-22). In *Abu Dhabi*, a decision that dismissed 10 of the 11 claims asserted against the RAs, the court sustained a claim for *fraud* where, on the basis of the specific allegations before it, it determined that "plaintiffs [had] sufficiently pled that the Rating Agencies did not genuinely or reasonably believe that the ratings they assigned to the Rated Notes were accurate and had a basis in fact." *Id*. at 176. But Plaintiff here has expressly disclaimed any allegation of fraud or knowing misconduct by any Defendant. (SAC ¶ 2). Moreover, Plaintiff cannot have it both ways. If it is asserting claims of knowing misstatements, its claims sound in fraud and it must meet the heightened pleading requirements of Rule 9(b), with which it does not even attempt to comply. If, however, Plaintiff is to be taken at its word, then Plaintiff cannot simultaneously allege that the RAs did not subjectively believe their rating opinions when issued.

even "pleading officer or director status alone is not enough," and that "pleading legal conclusions do not suffice." *Rich* v. *Maidstone Financial, Inc.*, 2002 WL 31867724, at *11 (S.D.N.Y. Dec. 20, 2002), citing *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999) (collecting cases). *See also* RAs Br. at 13-15.

Moreover, as confirmed by the two cases upon which Plaintiff relies, it is *only* in the context of allegations *directed at a CEO* or other person in an obvious position to exert actual control that some pre-*Iqbal* courts have held that relatively sparse factual allegations are sufficient. *See In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 188-89 (S.D.N.Y. 2003) (CEO and CFO); *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 352 n.85 (S.D.N.Y. 2003) (CEO and CFO positions with plaintiffs' "specific allegations" constituted sufficient pleading).

By contrast, here, the SAC alleges no ownership interest, board positions, signing power, or contractual power – or any other power to control – with respect to the Depositor. On the contrary, Plaintiff seeks to expand the scope of § 15 by implausibly categorizing the RAs – independent entities engaged to perform a service – as control persons. Thus, the requirement that control claims be supported by specific factual allegations applies here *a fortiori*. *See*, *e.g.*, *Sloane Overseas Fund, Ltd.* v. *Sapiens International Corp.*, 941 F. Supp. 1369, 1378-89 (S.D.N.Y. 1996) (higher level of specificity required when defendant "does not clearly occupy control status").

The SAC does not come remotely close to meeting the applicable standard. Indeed, Plaintiff is reduced to grossly exaggerating its own allegations, contending that "[t]he Rating Agencies controlled every stage of the securitization process. . . . " (Pl. Opp. at 14). The SAC does not contain this conclusory and implausible assertion and, in fact, *contradicts* it, making clear that the RAs controlled neither the Depositor nor the transactions. *See*, *e.g.*, SAC ¶¶ 12-13 (Goldman Sachs entities controlled Depositor and securitization); ¶ 27 (diagram of essential players who created and sold the securities, *not* including RAs). Equally unavailing is Plaintiff's argument that the RAs are "control persons" because their ratings were needed for the issuance. (Pl. Opp. at 14-15). This strained "but for" logic would, of course, convert any entity whose participation is allegedly "necessary" into a "control person" – a complete subversion of the 1933 Act's rigorous limitation on those subject to the statute's strict liability scheme. *Cf. In re*

*Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1122 (D. Nev. 1998) (allegations of "but for" role are "not a sufficient basis for 'control person' liability").

All the SAC alleges is that the RAs participated in "structuring" and decided which mortgage loans would be securitized and what credit enhancements would be required. (SAC ¶¶ 46-51). Even if deemed true, these allegations, which ignore the *pleaded* control role of others, do not amount to plausible allegations of "actual control" over the management and policies of the primary violator.[12] *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 352 F. Supp. 2d 429, 459 (S.D.N.Y. 2005). Nor does Plaintiff cite a single case where a court has sustained a "control" pleading against a party even arguably analogous or similar to the RAs. Plaintiff's § 15 claims asserted against the RAs clearly fail as a matter of law.

Dated:  January 20, 2010

__/s/ Joshua M. Rubins_____
Joshua M. Rubins
James J. Coster
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
*Attorneys for Moody's Investors Service, Inc.*

Respectfully submitted,

__/s/ Floyd Abrams_____
Floyd Abrams
S. Penny Windle
Adam Zurofsky
Tammy L. Roy
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
*Attorneys for The McGraw-Hill Companies, Inc.*

__/s/ Martin Flumenbaum_____
Martin Flumenbaum
Roberta Ann Kaplan
Andrew J. Ehrlich
Tobias J. Stern
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
*Attorneys for Fitch, Inc.*

---

[12] Plaintiff, unable to identify *any* factual allegation indicative of actual control, misleadingly cites SAC ¶ 49 as demonstrating that the RAs "could dispose of the requirement that the Depositor obtain an opinion of counsel prior to amending the Pooling and Servicing Agreement." (Pl. Opp. at 14). In fact, what is *actually* alleged is simply that the Pooling and Servicing Agreement could only be amended if the Depositor obtained written confirmation – from legal counsel *or* the RAs – that the amendment would not adversely affect the interests of the shareholders. (SAC ¶ 49). Plainly, this provision gave neither the RAs nor legal counsel "control" over the Depositor.