**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PUBLIC EMPLOYEES' RETIREMENT : 
SYSTEM OF MISSISSIPPI, Individually :
And on Behalf of All Others Similarly :
Situated, :
                                 : Civil Action No. 09-CV-1110 (HB)
           Plaintiff, :
           v. : ECF CASE
    :
THE GOLDMAN SACHS GROUP, INC., :
et al., :
    :
          Defendants. :

---

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND (III) SCHEDULING OF A SETTLEMENT HEARING

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
David L. Wales
Lauren A. McMillen
Stephen L. Brodsky
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

-and-

David R. Stickney
12481 High Bluff Drive, Ste. 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Class Counsel and Counsel for Lead*
*Plaintiff and Class Representative Public*
*Employees' Retirement System of*
*Mississippi*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ i

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF FACTS .................................................................................. 3

III.    SETTLEMENT NEGOTIATIONS .................................................................... 7

IV.     SUMMARY OF SETTLEMENT TERMS.......................................................... 8

V.      THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF
        THE PROPOSED SETTLEMENT .................................................................. 10

VI.     NOTICE TO THE CLASS SHOULD BE APPROVED................................... 14

VII.    THE PARTIES' PROPOSED SCHEDULE OF EVENTS ............................... 15

VIII.   CONCLUSION.................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Cohen v. J.P. Morgan Chase & Co.,*
   262 F.R.D. 153 (E.D.N.Y. 2009) .............................................................................................10

*In re Giant Interactive Group, Inc., Sec. Litig.,*
   279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................13

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................14, 15

*In re Initial Pub. Offering Sec. Litig.,*
   243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................................................10, 11

*Lane v. Page,*
   -- F. Supp. 2d --, 2012 WL 1940574 (D.N.M. May 22, 2012) ...................................................9

*In re Marsh & McLennan Cos. Sec. Litig.,*
   No. 04-cv-8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................14

*N.J. Carpenters Health Fund v. Residential Capital, LLC,*
   272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd, N.J. Carpenters Health Fund v. Rali Series
   2006-Q01 Trust,* 2012 WL 1481519 (2d Cir. Apr. 30, 2012)...........................................11, 12

*In re NASDAQ Market-Makers Antitrust Litig.,*
   176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................................10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
   163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................................10

*In re Royal Dutch/Shell Transport Sec. Litig.,*
   Civ. No. 04-374, 2008 WL 1787032 (D.N.J. Apr. 17, 2008) ...................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005).......................................................................................10, 14, 15

*In re Warner Chilcott Ltd. Sec. Litig.,*
   Case No. 06-cv-11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ......................15

## STATUTES, RULES & REGULATIONS

15 U.S.C.
 § 77z-1(a) ......................................................................................................................2, 8, 15

Federal Rules of Civil Procedure
 Rule 23 .............................................................................................................. passim
 Rule 26(f) .......................................................................................................................5
 Rule 30(b)(6) ..................................................................................................................6

Lead Plaintiff Public Employees' Retirement System of Mississippi ("Lead Plaintiff" or "MissPERS") respectfully submits this memorandum of law in support of its motion for (i) preliminary approval of the proposed Settlement; (ii) approval of the form and manner of notice to the Class; and (iii) scheduling of a Settlement Hearing.

## I.   INTRODUCTION

Following extensive litigation and mediation attempts before the Honorable Daniel Weinstein (Ret.), Lead Plaintiff, on behalf of the Class, and Defendants have successfully reached an agreement to settle this securities class action for $26,612,500.00 (subject to certain potential reductions). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), attached hereto as Exhibit 1. Judge Weinstein's Declaration in support of the Settlement is attached hereto as Exhibit 2.[1]

Lead Plaintiff respectfully submits that this recovery is an excellent result for the Class. The proposed $26,612,500.00 Settlement was reached only after Lead Plaintiff conducted an extensive investigation, filed three complaints, opposed motions to dismiss, conducted class certification discovery, obtained class certification, was continuing to litigate class certification in the Second Circuit, and undertook significant fact discovery, including review and analysis of more than one million pages of documents from the Defendants and more than forty non-parties, and took and/or defended eight depositions. The settlement negotiations were conducted at

---

[1] As explained in the Stipulation, the total settlement amount is $26,612,500, which consists of: (i) a fund of $21,312,500.00, subject to a $1,312,500.00 reduction if Stichting APB ("APB"), which has filed a private action against Goldman Sachs, elects to exclude itself from the Class; and (ii) a fund of $5,300,000.00 for attorneys' fees, litigation expenses, and claims administration expenses, subject to Court approval. All capitalized terms not defined herein are defined as set forth in the Stipulation.

arm's length – including a joint mediation session and numerous additional communications – facilitated by Judge Weinstein.

At the time the Settlement was reached, Lead Plaintiff and Lead Counsel were fully informed of the strengths and weaknesses of the claims and had consulted extensively with experts in specialized areas, including in the areas of residential mortgage-backed securities ("RMBS"), statistics, and economics. Following the extensive efforts of Lead Plaintiff and Lead Counsel, they were able to obtain the exceptional settlement for over $26.6 million related to a single offering of RMBS Certificates.

Lead Plaintiff requests that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class. Lead Plaintiff requests that this Court enter the Settling Parties' agreed-upon form of proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith, which, among other things, will:

(i)      preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)     approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation;

(iii)    find that the procedures established for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and § 27(a)(7) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995; and

2

(iv)     set a schedule and procedures for:  disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for attorneys' fees and/or reimbursement of litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

In short, Lead Plaintiff respectfully submits that the Settlement is not only fair, reasonable and adequate but represents an outstanding recovery for the Class, as described below and as will be demonstrated in connection with seeking the Court's final approval of the Settlement.

## II.    STATEMENT OF FACTS

MissPERS commenced the Litigation on February 6, 2009, by filing a class action complaint against Defendants, alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") with respect to disclosures made in the Offering Materials for the GSAMP 2006-S2 Offering, the GSAA 2006-2 Offering, and the GSAA 2006-3 Offering.  MissPERS alleged that Defendants violated the Securities Act by making untrue statements of material fact, or by omitting material facts necessary to make statements not misleading, in Offering Materials for the certificates, regarding:  (1) the underwriting standards purportedly used in connection with the origination of the underlying mortgages; (2) the maximum loan-to-value ratios used to qualify borrowers; (3) the appraisals of the properties underlying the mortgages; (4) the debt-to-income ratios permitted on the loans; and (5) the ratings of the certificates.[2]

---

[2] The recitation of the underlying facts of the Litigation is made only with respect to MissPERS' claims against Defendants for GSAMP 2006 S-2. By Order dated January 12, 2011, the Court

On April 7, 2009, MissPERS moved to be appointed as Lead Plaintiff, and for appointment of its selection of counsel as Lead Counsel. By Order dated May 6, 2009, the Court granted the motion and appointed MissPERS as Lead Plaintiff, and its selection of counsel, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel.

MissPERS filed an amended complaint on June 22, 2009. On August 10, 2009, Defendants filed a motion to dismiss the amended complaint. MissPERS thereafter filed the Second Amended Complaint – the operative complaint – on September 18, 2009. Defendants filed motions to dismiss the Second Amended Complaint on November 2, 2009. MissPERS filed its opposition to the motion to dismiss on December 21, 2009, and Defendants filed their reply in support of the motion to dismiss on January 20, 2010.

Following oral argument, by Opinion and Order dated January 12, 2011, the Court granted in part and denied in part the motion to dismiss. The Court dismissed all claims against the Rating Agency Defendants. It also dismissed for lack of standing MissPERS' claims against Defendants as to the GSAA 2006-2 Offering and the GSAA 2006-3 Offering, but allowed MissPERS to proceed with claims under Sections 11 and 12(a)(2) of the Securities Act as to alleged misstatements and omissions in the Offering Materials for the certificates of the GSAMP Trust 2006-S2. The Court also allowed MissPERS to proceed with claims under Section 15 of the Securities Act. Defendants filed their answer to the Second Amended Complaint on February 28, 2011.

As such, this case asserted claims on behalf of investors in a single offering of RMBS, GSAMP 2006 S-2. This Offering was for an original principal amount of $698 million in

---

dismissed MissPERS' claims as to McGraw-Hill Companies, Inc., Moody's Investors Service, Inc. and Fitch, Inc. (the "Ratings Agency Defendants").

Certificates and was backed by fixed second lien loans from New Century Financial Corporation ("New Century"). As of the date this lawsuit was commenced, investors in the Offering had received principal and interest payments of more than $396 million, based on the loans remaining in the trust there was still outstanding balance of more than $177 million, and the remainder had been written off.[3]

On March 3, 2011, the Court filed a Pre-Trial Scheduling Order pursuant to Rule 26(f) of the Federal Rules in which the Court: (i) added the Litigation to the October 2012 Trailing Trial Calendar as a jury trial; (ii) required that the parties engage in discovery related to class certification issues between April 1, 2011 and June 30, 2011; (iii) required that the parties disclose their expert reports and begin expert discovery related to class certification issues by July 15, 2011, to be completed by August 1, 2011; and (iv) established a schedule for merits discovery and dispositive motion practice.

The Court held a conference on June 7, 2011, to address various disputes between the parties. The Court confirmed that the case would remain on the October 2012 Trailing Trial Calendar, and set forth the following discovery and pre-trial schedule:

- Class certification discovery: Completed by August 1, 2011
- Expert discovery related to class certification: Completed by September 2, 2011
- Lead Plaintiff's class certification motion: Fully briefed by October 31, 2011
- Production of merits documents: Substantially completed by March 1, 2012
- Merits discovery: Completed by April 30, 2012
- Expert discovery: Completed by June 8, 2012[4]
- All dispositive motions: Fully briefed by August 20, 2012

---

[3] *See* Trustee Report dated February 25, 2009 for the GSAMP 2006 S-2 Offering.

[4] The Court subsequently granted the parties request to push back by 45 days the completion of written merits discovery. The Court also vacated the date for completion of all merits discovery and expert reports.

Class certification discovery commenced in April 2011 and merits discovery commenced in February 2012. During the course of the litigation, Lead Plaintiff and Defendants conducted extensive document discovery, including the review and analysis of more than one million pages of documents produced by the parties and by third parties in response to more than forty subpoenas. The parties took eight depositions, including of the parties' respective experts, the parties' Rule 30(b)(6) designees, employees of Defendants, and a third-party, and had discovery hearings before Magistrate Judge Freeman on August 3, 2011 and June 21, 2012.

On September 27, 2011, MissPERS moved for class certification pursuant to Rules 23(a) and 23(b) of the Federal Rules. On October 28, 2011, Defendants opposed the class certification motion. The Court held oral argument on the motion on December 16, 2011. On February 3, 2012, the Court granted MissPERS' motion and certified the case to proceed as a class action, appointing MissPERS as Class Representative and Bernstein Litowitz as Class Counsel. The Class, consistent with the definition in this Court's February 3, 2012 Order, includes the following:

> Any and all Persons who or which purchased or otherwise acquired publicly offered certificates of GSAMP Trust 2006-S2 from March 30, 2006 through February 6, 2009, inclusive, and were damaged thereby, *except those* Persons that timely and validly request exclusion from the Settlement. The Class does not include Defendants and each of their Related Parties *except* for any Investment Vehicle.[5]

On February 16, 2012, Defendants filed a Petition with the Second Circuit, captioned *Public Employees' Retirement System of Mississippi v. The Goldman Sachs Group, Inc., et al.*, 12-614-cv (2d Cir.), requesting permission to appeal the Class Certification Order pursuant to Rule 23(f). Lead Plaintiff opposed the Petition on March 2, 2012, and Defendants filed their

---

[5] The definition of the Class as stated herein for the purposes of the Settlement is the definition agreed to by the parties and contains slight non-substantive variations from the definition as certified by the Court in its February 3, 2012 Order.

reply on March 7, 2012. On June 13, 2012, the Second Circuit granted the Petition. By letter dated July 10, 2012, Defendants notified the Second Circuit of their intention to file their opening brief in the Appeal on July 27, 2012. On July 23, 2012, the Second Circuit granted Defendants' consent motion to stay the appeal pending this Court's consideration of the Settlement.

## III.   SETTLEMENT NEGOTIATIONS

The parties participated in extensive arm's-length negotiations facilitated by Judge Weinstein. As explained in Judge Weinstein's declaration, attached hereto as Exhibit 2, Judge Weinstein oversaw the settlement negotiations in this case for nearly a year, culminating in the parties ultimately reaching an agreement in principle on July 13, 2012, to settle the case based on Judge Weinstein's "Mediator's Recommendation."

Following the parties' agreement to select Judge Weinstein as a mediator, in September 2011, the parties submitted mediation statements and voluminous case-related materials to Judge Weinstein in advance of a joint mediation session. The joint mediation session was held telephonically on October 18, 2011. The parties did not reach agreement at that time. During the month following the joint mediation session, the parties, separately, participated in multiple calls with Judge Weinstein and made supplemental submissions to him, in an effort to determine whether an agreement could be reached.

By December 2011, when Lead Plaintiff's class certification motion was pending, it became apparent that the parties were unable to reach an agreement and they agreed to suspend mediation efforts and proceed with the litigation.

Following the Court's February 3, 2012 Order certifying the Class, and Defendants' subsequent filing of a Rule 23(f) petition related thereto (which was granted on June 13, 2012), the parties resumed settlement discussions before Judge Weinstein. As the parties moved deeper

into merits discovery and Defendants proceeded with their Rule 23(f) appeal, the settlement negotiations intensified -- with the parties communicating with Judge Weinstein on a regular basis in June and July.

Eventually, on July 13, 2012, Judge Weinstein made a "Mediator's Recommendation," recommending that the parties settle the case for the total amount of $26,612,500 (subject to a reduction if APB opts-out) as well as the general terms and structure of the Settlement. The parties accepted the recommendation the same day. Lead Counsel submitted a letter to the Court informing the Court of the proposed Settlement and proposing that the parties file this Stipulation, along with ancillary motion papers in support of preliminary approval of the Settlement on an expedited schedule, by July 31, 2012. Lead Counsel further requested that the Court hold the Litigation in abeyance until the parties' submission of the Stipulation and the Court's ruling on the Preliminary Approval Order. By endorsement dated July 17, 2012, the Court agreed to stay the proceedings up to the filing of the preliminary approval motion and to further discuss with the parties shortly thereafter.

## IV.    SUMMARY OF SETTLEMENT TERMS

Goldman Sachs has agreed to pay, or cause to be paid, the total sum of $26,612,500.00 ("Settlement Amount") to resolve the claims against Defendants related to the GSAMP 2006-S2 Offering. The Settlement Amount consists of $21,312,500.00, subject to a $1,312,500.00 reduction if APB requests exclusion from the Class pursuant to ¶35 of the Stipulation, and $5,300,000.00 for fees and expenses, subject to Court approval ("Lead Counsel Fees").[6] The

---

[6] As explained in the Notice (attached as Exhibit A-1 to the Stipulation), Lead Counsel intends to apply to the Court for an award of attorneys' fees, reimbursement of litigation expenses (which, in accordance with 15 U.S.C. § 78u-4(a)(4), may include the costs and expenses of Lead Plaintiff directly related to its representation of the Class), and claims administration expenses, to be paid

structure of the Settlement, with the Fund to pay fees and expenses as awarded by the Court separate from the Class Settlement Fund, was included in the Mediator's Recommendation after the mediator's consultation with the Defendants and is designed to address matters raised by the Defendants.

As set forth in the Stipulation and the Notice, the Net Settlement Fund will be distributed to those Class members who submit valid and timely Proof of Claim Forms pursuant to a Plan of Allocation that is explained in the Notice and proposed by Lead Plaintiff subject to Court approval.

If the Court grants preliminary approval, Lead Plaintiff, through the Claims Administrator, will notify Class members of the Settlement by mailing the Notice and Proof of Claim Form to Class members (*see* Exhibits A-1 and A-2 to the proposed Preliminary Approval Order submitted herewith).[7]   Additionally, Lead Counsel will cause to be published the Summary Notice (Exhibit A-3) in the national edition of *The Wall Street Journal* and over the *PR Newswire*.

The Notice advises Class members of the essential terms of the Settlement, information regarding Lead Counsel's Fee and Expense Application, and the proposed plan for allocating the

---

by Defendants in an amount not to exceed \$5.3 million, plus interest.  In the event that the amount that Lead Counsel applies for as attorneys' fees, litigation expenses and claims administration expenses is less than \$5.3 million, or the Court awards less than \$5.3 million, the difference between \$5.3 million and the amount awarded will be returned to Defendants from the Escrow Account. *See, e.g., Lane v. Page*, -- F. Supp. 2d --, 2012 WL 1940574, at \*16, \*66-68 (D.N.M. May 22, 2012); *In re Royal Dutch/Shell Transport Sec. Litig.*, Civ. No. 04-374, 2008 WL 1787032, at \*3 (D.N.J. Apr. 17, 2008).

[7] Lead Plaintiff requests approval to retain The Garden City Group, Inc. ("GCG") as the claims administrator for this case.  GCG has administered the large majority of the RMBS class settlements to date, including the settlements in *In re Dynex Capital Inc. Sec. Litig.*, Case No. 05-cv-1897-HB (S.D.N.Y.); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.* Case No. 08-cv-10841-JSR (S.D.N.Y.); and *In re Wells Fargo Mortgage-Backed Certificates Litig.*, Case No. 09-cv-1376-LHK (N.D. Cal.).

Settlement proceeds among Class members. The Notice also sets forth the procedure for objecting to the Settlement, Plan of Allocation or the request for an award of attorneys' fees and reimbursement of litigation expenses; sets out the procedure for Class members to opt out of the Class; and provides specifics on the date, time, and place of the Settlement Hearing.

## V.   THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

When reviewing a proposed settlement in the context of preliminary approval, courts make a preliminary determination regarding the fairness, reasonableness, and adequacy of settlement terms prior to allowing notice to be sent to the potential class. In making this preliminary determination, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *see also Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

Here, the terms of the proposed Settlement are plainly "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87. Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation are meritorious, continued litigation against Defendants posed significant risks that made any recovery for the Class uncertain.

From the outset, Lead Counsel and Lead Plaintiff appreciated the unique and significant risks inherent in this litigation. At the time of the initial filing, there was little established precedent for RMBS litigation, and no court had sustained claims under the federal securities laws for purchasers of RMBS securities. Likewise, no court at that time had certified an RMBS class or accepted plaintiffs' damages theories arising from such claims. *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011) (denying class certification). While Lead Plaintiff believes its claims are strong, it was aware of the limited precedent that existed for RMBS-specific class litigation, and that limited precedent would influence the inevitable motions for summary judgment, not to mention at trial and on appeal.

Even assuming that Lead Plaintiff prevailed at trial in establishing untrue statements and omissions in the Offering Materials, Defendants would still have the opportunity to persuade the Court, or the jury, that the statutory damages pursuant to § 11 should be reduced or eliminated because a portion, or all, of the losses are attributable to causes other than the misstatements or omissions.

Lead Plaintiff faced additional affirmative defenses, including statute of limitations and "knowledge" defenses. For example, in addition to the "standing" defense on which Defendants were partially successful (the Court dismissed claims related to the two offerings for which Lead Plaintiff had not purchased certificates), Defendants contended that Lead Plaintiff's claims were untimely because Lead Plaintiff should have been on notice well before February 6, 2008 (one

year prior to the February 6, 2009 filing of the lawsuit), based on a variety of factors, including

that the originator of the loans contained in the Offering filed for bankruptcy and was sued for

securities fraud more than one year prior to this Litigation being commenced. Although the

Court denied Defendants' motion to dismiss on this ground, it noted that Defendants merely "had

not demonstrated, at this stage of the proceedings," thus, Lead Plaintiff understood that

Defendants would continue to press this defense.

Defendants also argued in opposing class certification that individual investors had "in-

depth information" about the appraisal and underwriting practices from their direct interactions

with originators at industry meetings and their access to loan tapes, such that they would be

susceptible to a "knowledge" defense. Defendants based their argument on this Court's decision

in *Residential Capital, supra,* where class certification was denied and which was subsequently

affirmed by the Second Circuit. *See N.J. Carpenters Health Fund v. Rali Series 2006-Q01 Trust,*

Case No. 11-1683-cv, 2012 WL 1481519 (2d Cir. Apr. 30, 2012) ("*Rali*"). This Court granted

Lead Plaintiff's motion for class certification in this case, rejecting Defendants' *Rali* arguments.

The decision in this case followed other cases where class certification was granted. *See, e.g.,*

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.,* Case No. 08-cv-10841-JSR (S.D.N.Y.),

Opinion and Order dated August 22, 2011 (ECF No. 156); *New Jersey Carpenters Health Fund*

*v. DLJ Mortg. Capital Inc.,* 08 civ. 5653 (S.D.N.Y. Aug. 16, 2011). The Defendants were

aggressively pursuing their challenge to class certification, filing a 23(f) Petition, which the

Second Circuit granted, agreeing to review the Class Certification Order.

Defendants were also defending the case on the merits, asserting both that the evidence

being developed did not support a finding that the Offering Materials contained any false

statements. Defendants were further asserting a due diligence defense that they conducted

appropriate due diligence on the loans that they acquired from New Century and securitized in the Offering.

The Defendants were also aggressively challenging damages. Under Section 11, recoverable damages are based on the difference between the purchase price of the security and the value of the security on the date the lawsuit was filed, subject to reduction for "negative causation." Defendants here contend that any losses were caused by factors other than untrue statements in the Offering Materials, such as the downturn in the economy and the housing market. Given that the timing of the price declines at issue coincided with the national economic downturn, Defendants' "negative causation" defense was an argument that, at the very least, would have to be resolved through expert testimony at trial. *See, e.g., In re Giant Interactive Group, Inc., Sec. Litig.*, 279 F.R.D. 151, 161-62 (S.D.N.Y. 2011) (approving settlement where the litigation risks included a "credible defense of 'negative causation'"). As such, damages could range from approximately $320 million, assuming no negative causation, to near zero, assuming Defendants' position on negative causation.

The proposed Settlement of $26,612,500.00 when viewed in the context of these risks and the uncertainties involved with any litigation, make the Settlement extremely beneficial to the Class.

In sum, the Settlement was negotiated at arm's-length, by counsel who are experienced in complex securities litigation and who were acting in an informed manner. The Litigation was actively prosecuted for over three years, beginning at a time when there was little or no precedent in the RMBS area. As discussed above, Lead Counsel conducted substantial investigations and discovery during this time and, accordingly, is well-informed as to the operative facts and potential risks of the Litigation. Under these circumstances, a presumption of

fairness attaches to the proposed Settlement. *See Wal-Mart*, 396 F.3d at 116 (A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-cv-8144 (CM), 2009 WL 5178546, at *4 (S.D.N.Y. Dec. 23, 2009) (same).

Moreover, the Settlement was negotiated under the direction and with the direct involvement of Lead Plaintiff. This fact further strengthens the presumption of fairness. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

## VI. NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the proposed Preliminary Approval Order, Lead Plaintiff will notify Class members of the Settlement by mailing the Notice to all Class members who can reasonably be identified. The Notice will advise Class members of, *inter alia*, the essential terms of the Settlement and information regarding Lead Counsel's application for attorneys' fees and reimbursement of litigation expenses. The Notice also provides specifics on the date, time and place of the Settlement Hearing and the procedures for Class members to opt out of the Class and object to the Settlement, the Plan of Allocation or the application for fees and expenses. The proposed Preliminary Approval Order further requires Lead Plaintiff to cause the Summary Notice to be published once in the national edition of *The Wall Street Journal* and over the *PR Newswire*. Lead Counsel will also post a copy of the Notice on the website created specifically for the Settlement, www.GoldmanSachsRMBSLitigation.com, as well as Lead Counsel's website, www.blbglaw.com.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act (15 U.S.C. § 77z-1(a)(7)), and is consistent with the form and manner of notice approved in other securities class action settlements, including, among others, the RMBS class settlements in *Merrill Lynch* and *Wells Fargo*. The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (internal quotation marks omitted). These notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing*, 225 F.R.D. at 448-49.

## VII.   THE PARTIES' PROPOSED SCHEDULE OF EVENTS

The parties jointly propose the following schedule for the Settlement-related events in this case.

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class members[8] ("Notice Date") | 10 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice[9] | 5 business days after Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting exclusion requests or objections | 21 calendar days prior to the Settlement Hearing |

---

[8] *See* Exhibits A-1 and A-2 to the Preliminary Approval Order.

[9] *See* Exhibit A-3 to the Preliminary Approval Order.

| Event | Proposed Due Date |
|-------|-------------------|
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | (at least 100 days after the Settlement was filed on July 31, 2012) |
| Deadline for submitting claim forms | 120 calendar days after the Notice Date |

## VIII.  CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily approve the Settlement, and approve the Notice.  The Settling Parties' agreed-upon form of proposed Preliminary Approval Order is submitted herewith.

Dated:  July 31, 2012                     Respectfully submitted,


                                    BERNSTEIN LITOWITZ BERGER &
                                    GROSSMANN LLP


                                    By: _____
                                          David L. Wales
                                          Lauren A. McMillen
                                          Stephen L. Brodsky
                                          1285 Avenue of the Americas
                                          New York, New York 10019
                                          (212) 554-1400

                                          -and-

                                          David R. Stickney (admitted *pro hac vice*)
                                          12481 High Bluff Drive, Suite 300
                                          San Diego, California 92130
                                          (858) 793-0070

                                    *Class Counsel and Counsel for Lead Plaintiff and
                                    Class Representative Public Employees' Retirement
                                    System of Mississippi*

16