**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>GOLDMAN SACHS GROUP, INC., et al.,<br><br>　　　　　　　　Defendants. | Civil Action No. 09-CV-1110-HB<br><br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S MOTION FOR APPROVAL**
**OF SETTLEMENT AND PLAN OF ALLOCATION**

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
David Wales
Lauren A. McMillen
Stephen L. Brodsky
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
　　-and-
David R. Stickney
Niki Mendoza
12481 High Bluff Drive, Ste. 300
San Diego, CA 92130
Telephone:  (858) 793-0070
Facsimile:   (858) 793-0323

*Class Counsel and Counsel for Lead Plaintiff*
*and Class Representative Public Employees'*
*Retirement System of Mississippi*

Dated:  October 4, 2012

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .............................................................................................................. 5

I.     THE PROPOSED SETTLEMENT WARRANTS COURT
       APPROVAL ...................................................................................................... 5

       A.     The Settlement Was Reached After Arm's-Length
              Negotiations With The Assistance Of An
              Experienced Mediator And Is Procedurally Fair ................................... 6

       B.     Application Of The *Grinnell* Factors Supports
              Approval Of The Settlement As Fair, Reasonable
              And Adequate ....................................................................................... 8

              1.     The Complexity, Expense And Likely
                     Duration Of The Litigation Support
                     Approval Of The Settlement ...................................................... 8

              2.     The Reaction To Date Of The Class
                     Supports Approval Of The Settlement ..................................... 10

              3.     The Stage Of The Proceedings And The
                     Amount Of Discovery Completed Support
                     Approval Of The Settlement ..................................................... 11

              4.     The Risks Of Establishing Liability And
                     Damages Support Approval Of The
                     Settlement ............................................................................... 13

              5.     The Risks Of Maintaining The Class Action
                     Through Trial Support Approval Of The
                     Settlement ............................................................................... 16

              6.     The Ability Of The Defendants To
                     Withstand A Greater Judgment Supports
                     Approval Of The Settlement ..................................................... 17

              7.     The Range Of Reasonableness Of The
                     Settlement Fund In Light Of The Best
                     Possible Recovery And All The Attendant
                     Risks Of Litigation Supports Approval Of
                     The Settlement ......................................................................... 17

II.    THE PLAN OF ALLOCATION IS FAIR AND
       REASONABLE AND SHOULD BE APPROVED .......................................... 20

III.   NOTICE TO THE CLASS SATISFIED THE
       REQUIREMENTS OF RULE 23 AND DUE PROCESS ................................. 23

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................................................16, 22

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .........17, 21

*Clark v. Ecolab Inc.*,
   No. 07 Civ. 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ...............................19

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).............................................................................................7, 17

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................................... passim

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...........................19, 20

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011).................................................................................................14

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   02-CV-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................................. passim

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................5, 12, 15, 21

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...........................................8

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................8, 24

*In re IMAX Sec. Litig.*,
   06 Civ. 6128 (NRB), -- F.R.D. --, 2012 WL 2359653 (S.D.N.Y. June 20, 2012)...................7

*Lentell v. Merrill Lynch & Co. Inc.*,
   396 F.3d 161 (2d Cir. 2005)..................................................................................................14

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................................9

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................10, 12, 22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............................12

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) .............................................................................................8

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .......................................................................................6, 18

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...........................6, 18, 19, 22

*Parker v. Time Warner Entm't Co.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ................................................................................17

*In re Sadia S.A. Sec. Litig.*,
  No. 08 Civ. 9528 (SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ..................................6

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................................22

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 0165 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ....................10, 19, 20

*In re Wachovia Equity Sec. Litig.*,
  08 Civ. 6171 (RJS), 2012 WL 2774969 (S.D.N.Y. June 12, 2012) .........................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................5, 6, 8, 23

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ...........................24

*White v. First Am. Registry, Inc.*,
  No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ....................................6

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...........................................................................15, 22

**STATUTES**

15 U.S.C. § 77k ...............................................................................................................3, 15, 20

15 U.S.C. § 77m .......................................................................................................................15

15 U.S.C. § 77z-1(a)(7) ...........................................................................................................23

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff, the Public Employees' Retirement System of Mississippi ("Lead Plaintiff" of "MissPERS"), on behalf of itself and the Class (defined below), respectfully submits this memorandum of law in support of its motion for approval of the proposed settlement of this securities class action (the "Litigation") against defendants The Goldman Sachs Group, Inc., Goldman, Sachs, & Co., Goldman Sachs Mortgage Co., GS Mortgage Securities Corp. (collectively, "Goldman Sachs"), and Jonathan S. Sobel, Daniel L. Sparks and Mark Weiss (the "Individual Defendants" and, together with Goldman Sachs, the "Defendants"), and for approval of the proposed plan of allocation of the settlement proceeds (the "Plan of Allocation").[1]

## PRELIMINARY STATEMENT

This Litigation asserts claims under §§ 11, 12 and 15 of the Securities Act of 1933 in connection with a single offering of Residential Mortgage Backed Securities ("RMBS") by Goldman Sachs. The total Settlement amount achieved by Lead Plaintiff, $26,612,500.00, is an excellent result for the Class.[2] The Settlement is the product of over three years of hard-fought

---

[1] Lead Plaintiff is simultaneously submitting herewith the Declaration of David L. Wales in Support of (A) Lead Plaintiff's Motion for Approval of Class Action Settlement and Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Wales Declaration" or "Wales Decl."). The Wales Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation through the submission of the Settlement to the Court; the nature of the claims asserted in the Litigation; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; the terms of the Plan of Allocation for the Settlement proceeds; and a description of the services Lead Counsel provided for the benefit of the Class.

Unless otherwise noted, capitalized terms have the meanings set out in the Stipulation and Agreement of Settlement (the "Stipulation"), dated July 31, 2012.

[2] As explained in the Stipulation, the total settlement amount is $26,612,500.00, which consists of: (i) a fund of $21,312,500.00, subject to a $1,312,500.00 reduction if Stichting ABP, which has filed a private action against Goldman Sachs, elects to exclude itself from the Class; and (ii)

1

litigation, which included the filing of three complaints, opposing motions to dismiss, conducting class certification discovery, obtaining class certification, continued litigation of class certification in the Second Circuit, contentious discovery disputes, and significant fact discovery, including review and analysis of more than one million pages of documents from Defendants and more than thirty non-parties, and preparing for and participating in eight depositions.  Settlement negotiations took place simultaneously while the parties continued to aggressively prepare for trial, which was rapidly approaching and scheduled for just three months away when the agreement was reached.  Wales Decl. ¶¶12-76.  The Settlement resulted from intensive arm's-length negotiations conducted under the auspices of Honorable Daniel H. Weinstein (Ret.), who ultimately provided the parties with a "Mediator's Recommendation," which included the Settlement Amount ($26,612,500), as well as the general terms and structure of the Settlement. Declaration of the Mediator, Hon. Daniel H. Weinstein, attached to the Wales Decl. as Exhibit A ("Weinstein Decl."), ¶¶6-14.

The parties each independently accepted the Mediator's Recommendation on July 13, 2012, and promptly informed the Court.  Wales Decl. ¶¶75-76.  In accepting this recommendation and reaching the Settlement, Lead Plaintiff and Lead Counsel considered the numerous risks associated with continuing the Litigation, including the risks of recovering less than the Settlement Amount after substantial delay or of no recovery at all.  Although Lead Plaintiff had overcome Defendants' motions to dismiss in part and had achieved class certification (an issue that was on appeal when the Settlement was reached), the substantial discovery completed at the time the settlement was reached confirmed that there were significant

---

a fund of $5,300,000.00 for attorneys' fees, litigation expenses, and claims administration expenses, subject to Court approval.

hurdles to establishing liability and proving damages in the Litigation.  To avoid summary judgment and prevail at trial, Lead Plaintiff would have had to establish that the Offering Materials contained material misstatements or omissions about the underwriting of the loans underlying the RMBS, the appraisal and loan-to-value ratios of the loans, and the ratings assigned to the RMBS.  Success on such task was far from certain particularly in light of risk disclosures contained in the Offering Materials.  Wales Decl. ¶82a.

Even if Lead Plaintiff prevailed on liability at trial, Defendants would still have the opportunity to persuade the jury that the statutory damages pursuant to the Securities Act should be reduced or eliminated because a portion, or all, of the losses were attributable to causes other than the alleged misstatements and omissions, such as the overall economic downturn, housing price declines or reduced liquidity in the market for RMBS. *Id.* ¶82b.  Defendants would also have raised numerous additional defenses including that they had conducted a reasonable investigation of the loans and the Certificates and therefore "had reasonable ground to believe and did believe" that the Offering Materials contained no untrue statements or omissions.  15 U.S.C. § 77k(b)(3)(A); *see* Wales Decl. ¶82c.  Defendants also contended that Lead Plaintiff's claims were untimely because information related to the alleged misstatements was in the market more than one year before suit was filed; and that Lead Plaintiff and various other members of the Class had actual knowledge of the alleged misstatements or omissions at the time they purchased the Certificates.  Wales Decl. ¶82c.

Additionally, Defendants filed a petition seeking to appeal this Court's certification of class under Federal Rule of Civil Procedure 23(f), and the Second Circuit granted the petition – allowing Defendants' to immediately pursue their appeal – on June 13, 2012.  Wales Decl. ¶82d.

All of these litigation risks were exacerbated by the relative lack of established precedent

in class actions by purchasers of RMBS, which increased the level of uncertainty and the risks of appellate reversal.  Finally, many of these contested issues, including proof of damages and Defendants' "negative causation" and due diligence defenses, would have required expert testimony, and there can be no certainty as to how a jury would have responded to competing experts' testimony.  Accordingly, while Lead Plaintiff and Lead Counsel believe that the Class had strong claims, they recognized that the Class would have faced significant risks in overcoming these arguments and establishing all the elements of Lead Plaintiff's claims against Defendants.

The $26,612,500 Settlement achieved by Lead Plaintiff avoids these risks and provides an immediate and substantial financial benefit for the Class.  In light of the significant obstacles to recovery, and the substantial time and expense that continued litigation would require, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is an outstanding result for the Class, and provides a fair and reasonable resolution of the claims against Defendants in this Litigation.[3]

The terms of the Settlement are set forth in the Stipulation, dated July 31, 2012, which was previously submitted to the Court (ECF No. 140-1).  Pursuant to the Court's Administrative and Notice Order, filed August 13, 2012 (ECF No. 141) (the "Notice Order"), the Court-approved Claims Administrator, Garden City Group, Inc. ("GCG") disseminated notice of the Settlement to potential Class Members.  *See* Declaration of Jennifer M. Keough Re Notice

---

[3] *See* Wales Decl. ¶70; *see also* Exhibit B to Wales Decl., Declaration of George W. Neville, Special Assistant Attorney General, Legal Counsel to the Public Employees' Retirement System of Mississippi, in Support of (A) Lead Plaintiff's Motion for Approval of Settlement and Plan of Allocation; (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (C) Lead Plaintiff's Request for Reimbursement of Costs and Expenses ("Neville Decl.") ¶¶6, 12.

Dissemination and Publication, Exhibit C to the Wales Decl. ("Keough Decl."). The $26,612,500 Settlement Amount was deposited into an escrow account on August 24, 2012, and has been invested for the benefit of the Class.[4]

## ARGUMENT

## I. THE PROPOSED SETTLEMENT WARRANTS COURT APPROVAL

Under Rule 23(e) of the Federal Rules of Civil Procedure, class action settlements are subject to court approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 160 (S.D.N.Y. 2011). A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).

In this Circuit, public policy favors the settlement of disputed claims among private litigants, particularly in complex class actions such as this one. *See id.* ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *Giant Interactive*, 279 F.R.D. at 160-61 ("Settlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell*

---

[4] The Class includes any and all Persons who or which purchased or otherwise acquired the publicly offered certificates of GSAMP Trust 2006-S2 from March 30, 2006 through February 6, 2009, inclusive, and were damaged thereby, *except* those Persons that timely and validly request exclusion from the Settlement. The Class does not include Defendants and each of their Related Parties *except* for any Investment Vehicles.

*Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).  Because "the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial."  *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) (citations and internal quotation marks omitted); *see also White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at \*2 (S.D.N.Y. Mar. 7, 2007) (in deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another").

### A.     The Settlement Was Reached After Arm's-Length Negotiations With The Assistance Of An Experienced Mediator And Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached as a result of arm's-length negotiations between experienced counsel after meaningful discovery. *See Wal-Mart*, 396 F.3d at 116; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at \*1 (S.D.N.Y. Dec. 28, 2011); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

The Settlement here is entitled to this strong presumption of fairness because all parties in the Litigation are represented by counsel well experienced in litigating these types of claims (Wales Decl. ¶¶104-05); the Settlement was the result of intense, arm's-length negotiations (*id.* ¶¶70-76; Weinstein Decl., attached as Exhibit A to the Wales Decl.; and the Litigation had proceeded well into discovery before settlement was reached – Lead Counsel had obtained over one million pages of documents from Defendants and in response to subpoenas to more than

6

thirty non-parties, and eight depositions had been taken at the time the Settlement was achieved – and a ninth deposition was well underway at the precise time the settlement was reached, resulting in a halting of the deposition at mid-day (*id.* ¶¶26-60).

Judge Weinstein oversaw the mediation session and related negotiations and ultimately recommended the $26,612,500 Settlement Amount and the structure of the Settlement to the parties.  The structure of the Settlement, with the fund to pay fees and expenses as awarded by the Court separate from the Class Settlement Fund, was included in the Mediator's Recommendation after Judge Weinstein's consultation with the Defendants and is designed to address matters raised by the Defendants.  Weinstein Decl. ¶13; Wales Decl. ¶75.  Judge Weinstein explains that the Settlement was reached only "at the end of an extended mediation process and hard-fought litigation" and "represents a well-reasoned and sound resolution of highly uncertain litigation."  Weinstein Decl. ¶2.  Judge Weinstein, therefore, "unreservedly recommend[s] the Settlement that has been reached as reasonable, arm's length, and accurately reflective of the risks and potential rewards of the claims being settled."  *Id.*  The active involvement of an experienced and independent mediator like Judge Weinstein in the negotiation of the Settlement is strong evidence of the absence of any collusion and further supports the presumption of fairness.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *see also In re IMAX Sec. Litig.,* 06 Civ. 6128 (NRB), -- F.R.D. --, 2012 WL 2359653, at *3, *9 (S.D.N.Y. June 20, 2012) (approving a securities class action settlement previously mediated by Judge Weinstein; finding fact that mediation "took place before retired judges" buttresses presumption of fairness);  *In re Wachovia Equity Sec. Litig.,* 08 Civ. 6171 (RJS), 2012 WL 2774969, at *3 (S.D.N.Y. June 12, 2012) (finding procedural fairness supported by the fact that "The parties reached the settlement after arms'-length negotiations by experienced and competent counsel, with the involvement of a mediator,

retired Judge Daniel Weinstein"); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.,* 02-CV-3400

(CM), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (same).

> **B.    Application Of The *Grinnell* Factors Supports**
> **Approval Of The Settlement As Fair, Reasonable And Adequate**

The Settlement is also substantively fair, reasonable and adequate and in the best interests

of the Class.  The standards governing approval of class action settlements are well established in

this Circuit.  In *Grinnell*, the Second Circuit held that the following were factors to be considered

in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction
> of the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the
> trial, (7) the ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery, [and] (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted), *see also McReynolds v. Richards-Cantave*, 588 F.3d 790,

804 (2d Cir. 2009); *Wal-Mart*, 396 F.3d at 117.  "In finding that a settlement is fair, not every

factor must weigh in favor of settlement, 'rather the court should consider the totality of these

factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225

F.R.D. 436, 456 (S.D.N.Y. 2004) (citation omitted).   Here, the Settlement easily satisfies the

criteria set forth in *Grinnell*.

> **1.    The Complexity, Expense And Likely Duration**
> **Of The Litigation Support Approval Of The Settlement**

"[I]n evaluating the settlement of a securities class action, federal courts, including this

Court, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'"

*FLAG Telecom*, 2010 WL 4537550, at *15 (citation omitted).   Indeed, courts recognize that

"[s]ecurities class actions are generally complex and expensive to prosecute," *In re Gilat*

*Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007).

Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Lead Plaintiff would have to overcome numerous hurdles in order to achieve a litigated verdict in this Litigation.   Assuming summary judgment for Defendants was denied, the Litigation would have culminated in a jury trial that would have required a substantial amount of factual and expert testimony.   Finally, whatever the outcome at trial, it is virtually certain that an appeal would be taken (in addition to the appeal on class certification that was already pending at the time the Settlement was reached).   All of the foregoing would have posed considerable expense for the Class and would have substantially delayed the Class' ability to recover – even assuming that Lead Plaintiff was ultimately successful on the claims.

The subject matter involved in the Litigation, as well as the structured nature of the securities, also added to the complexity of the Litigation.   Lead Plaintiff and Lead Counsel recognized that if the Class were to prevail on the claims at trial they would need to marshal and analyze a great deal of complex information concerning the design and structure of the Goldman Sachs RMBS at issue, the disclosures in the Offering Materials, and the relevant details about the numerous loans underlying the RMBS, including the true nature of the underwriting of the loans and the related appraisals.   At the time the Settlement was reached, Lead Plaintiff had obtained over one million pages of documents from Defendants and third-parties.   Wales Decl. ¶44.   Lead Plaintiff and Lead Counsel would have needed to continue working closely with their experts to present Lead Plaintiff's claims and the voluminous supporting data to a jury in a simple and comprehensible manner at trial.   Lead Counsel was prepared to do so, but it cannot be disputed that achieving a litigated verdict in this Litigation was far from certain.   As discussed below in

9

Section I.B.4, the multiple defenses that Defendants were expected to interpose to liability and damages, as previewed in their motions to dismiss, discovery disputes, and class certification opposition – including negative causation, due diligence, the statute of limitations, and Class Members' knowledge of the alleged misstatements, among others – would also have added significantly to the complexity of the case.  Wales Decl. ¶82.

In contrast to this complex, lengthy, and uncertain litigation, the Settlement here provides an immediate, significant and certain recovery of $26,612,500 for members of the Class. Accordingly, this factor supports approval of the Settlement.

### 2.        The Reaction To Date Of The Class<br>Supports Approval Of The Settlement

The reaction of the Class to the Settlement is a significant factor in considering its fairness and adequacy.  *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *16; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).

Pursuant to the Notice Order, the Court-approved Claims Administrator, GCG, began mailing copies of the Notice and Claim Form to potential Class Members and nominees on August 20, 2012.  *See* Keough Decl. at ¶¶2-3.  As of September 25, 2012, more than 2,300 copies of the Notice and Claim Form had been disseminated to potential Class Members.  *Id*. ¶9. In addition, a Summary Notice was published in the national edition of *The Wall Street Journal* and transmitted over the *PR Newswire* on August 27, 2012.  *Id.* ¶10.  The Notice set out the essential terms and structure of the Settlement and informed potential Class Members of, among other things, their right to opt out of the Class or object to any aspect of the Settlement, as well as the procedure for submitting Claim Forms.  While the deadline set by the Court for Class Members to exclude themselves or object to the Settlement has not yet passed, to date, Lead

Counsel has received no objections to the Settlement or the Plan of Allocation and no requests for exclusion.[5]

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed Support Approval Of The Settlement

The Settlement was reached after nearly three years of hard fought litigation that included extensive motion practice, review and analysis of over one million pages of documents, eight depositions, and consultation with multiple experts. Wales Decl. ¶¶12-69. Accordingly, Lead Plaintiff and Lead Counsel had a firm grasp of the strengths and weaknesses of the case when negotiating and evaluating the proposed Settlement.

At the time that Lead Plaintiff entered into the agreement in principle to settle in July 2012, the case had been thoroughly developed, and the parties were preparing for the trial date that was quickly approaching just three months later, in October 2012. Wales Decl. ¶¶22-24. As set forth in greater detail in the Wales Declaration, Lead Counsel had extensively developed the claims against Defendants to that point by, among other things:

- drafting three detailed complaints based on Lead Counsel's extensive investigation into the underlying facts and legal research into the applicable claims (*id*. ¶¶12-18);

- preparing extensive briefing in response to motions to dismiss (*id*. ¶¶19-21);

- engaging in comprehensive negotiations and discovery motion practice with Defendants and non-parties to obtain over one million pages of documents and to compel a deposition of a Goldman Sach's representative regarding its due diligence defense, among others (*id*. ¶¶28-50);

- preparing for and taking or defending eight depositions, and notice and preparing for additional depositions (*id*. ¶¶51-55);

- successfully litigating the motion for class certification, which involved expert testimony and depositions of experts and class representatives, and an appeal filed by

---

[5] The deadline for submitting objections and requesting exclusion from the Class is October 18, 2012. As provided in the Notice Order, Lead Plaintiff will file reply papers on November 1, 2012, addressing any objections and requests for exclusion that may be received.

11

Defendants (*id.* ¶¶61-65)[6];

- consulting extensively with experts and consultants in the fields of mortgaged-backed securities, loan underwriting, statistics, underwriter due diligence and damages (*id.* ¶¶66-69); and

- drafting mediation statements and responses and participating in a joint mediation session and subsequent negotiations (*id.* ¶¶71-77).

Lead Plaintiff and Lead Counsel were familiar with Defendants' defenses through briefing of the motions to dismiss and the class certification motion, as well as from their analysis of the Defendants' discovery posture and motion practice and Defendants' settlement negotiations.

Thus, at the time the agreement in principle to settle was reached, Lead Plaintiff and Lead Counsel "possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Maley*, 186 F. Supp. 2d at 364. As a result, Lead Plaintiff and Lead Counsel had a well-informed basis for their belief that the Settlement is a favorable resolution of the Litigation for the Class and this factor strongly supports approval of the Settlement. *See, e.g., Giant Interactive*, 279 F.R.D. at 161 (this factor supported settlement where the action had proceeded through substantial document production, five depositions, "a round of mediation submissions and sessions, and expert consultations on damages and causation," and, thus, "the parties were able to make an intelligent appraisal of the value of the case"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *6 (S.D.N.Y.

---

[6] In advance of filing Lead Plaintiff's class certification motion, to identify potential Class Members, Lead Counsel: (1) served subpoenas on dozens of major custodial banks whose internal records reflect holdings and transactions in the RMBS at issue; (2) obtained transactional information from DTCC, which provides clearing and settlement information for RMBS; and (3) reviewed Defendants' internal files for information about the initial purchasers of the RMBS. Wales Decl. ¶61.

Dec. 23, 2009) ("The advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of approval.").

### 4. The Risks Of Establishing Liability And Damages Support Approval Of The Settlement

*Grinnell* holds that, in assessing the fairness, reasonableness and adequacy of a settlement, courts should consider such factors as the "risks of establishing liability [and] . . . the risks of establishing damages." 495 F.2d at 463 (citations omitted). While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were significant risks as to whether they would ultimately be able to prove liability and establish damages on their claims in the Litigation, as well as with respect to the amount of damages that Lead Plaintiff could establish. These risks included challenges in proving that there were misstatements and omissions in Offering Materials that also contained warnings. Further risks included, for example, overcoming Defendants' arguments that: (i) some or all of the declines in the value of the Certificates were due to causes other than the alleged misstatements or omissions; (ii) they had conducted a "reasonable investigation" and thus could satisfy a "due diligence" defense; (iii) Lead Plaintiff's claims were untimely; and (iv) Lead Plaintiff and various members of the Class had actual knowledge of the misstatements and thus could not bring valid claims.

***Risks of Establishing Liability.*** To avoid summary judgment and prevail at trial, Lead Plaintiff would need to present evidence that the Offering Materials contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein related to (1) the underwriting of the loans underlying the RMBS; (2) the appraisal and loan-to-value ratios of the loans underlying the RMBS; or (3) the ratings assigned to the RMBS. Defendants argued that the Offering Materials contained no untrue statements or omissions. In so doing,

13

Defendants relied on and would continue to rely on disclosures and warnings in the Offering Materials about various risks associated with the RMBS.  For example, Defendants would rely on statements such as "[a] substantial portion of the mortgage loans" in the underlying pools represented "underwriting exceptions" and that Goldman Sachs could provide "no assurance that [the originators] followed stated guidelines . . . ."  Wales Decl. ¶82a.

Defendants would also contend that proving liability would be more difficult in light of a recent Second Circuit decision, *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011), contending that it raised the standard of proof for statements of opinion concerning appraisals from the strict liability customary in Securities Act cases to one close to knowing misconduct. *See Fait*, 655 F.3d at 110 ("when a plaintiff asserts a claim under section 11 or 12 based upon a belief or opinion alleged . . . liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed").  Wales Decl. ¶82a.

***Risks of Establishing Damages.***  Defendants also contended that establishing damages under the Securities Act posed significant obstacles for Lead Plaintiff and the Class.  Under § 11(e) of the Securities Act, damages may be reduced or eliminated if the defendant proves that a portion or all of the statutory damages are attributable to causes other than the misstatements or omissions.  Defendants asserted throughout the Litigation – and were expected to continue to assert through summary judgment and trial – that the overall economic downturn, housing price declines and reduced liquidity in the market for mortgage-backed securities, and not the alleged misstatements and omissions, were responsible for the declines in the Certificates' value.  Wales Decl. ¶82b.  At a minimum, these issues would need to be decided, following expert testimony, at trial.  *See, e.g., Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 174 (2d Cir. 2005) (the

likelihood of demonstrating loss causation decreases if a "plaintiff's loss coincides with a marketwide phenomenon"); *Giant Interactive*, 279 F.R.D. at 161-62 (approving settlement where the litigation risks included a "credible defense of 'negative causation'").

***Risks to Overcoming Defendants' Due Diligence Defense.*** Defendants would likely attempt to assert a defense to liability under § 11 based on their contention that they had conducted a "reasonable investigation" of the loans and the Certificates at issue and, therefore, "had reasonable ground to believe and did believe" that the Offering Materials contained no untrue statements or omissions. 15 U.S.C. § 77k(b)(3)(A). Wales Decl. ¶82c. While Defendants would have the burden of establishing this "due diligence" defense, if they were successful in establishing the reasonableness of their investigation, it could provide a complete defense to liability. Moreover, the question as to what constituted a "reasonable investigation" in these circumstances would likely have been the subject of competing expert testimony at trial. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 338 (S.D.N.Y. 2005) (risks of litigation supported the settlement where defendants "had asserted due diligence defenses and might have been successful at establishing the adequacy of their efforts at trial").

***Risks to Overcoming Defendants' Statute of Limitations Argument.*** Defendants would also have continued to argue that Lead Plaintiff's claims were untimely because certain information related to the alleged misstatements was in the market more than one year before the suit was filed. Specifically, Defendants asserted that New Century Financial Corporation ("New Century") filed for bankruptcy and was sued for securities fraud in early 2007, and thus this Litigation, first initiated in February 2009, was untimely, *see* 15 U.S.C. § 77m. Wales Decl. ¶82c.

***Risks of Overcoming Defendants' "Knowledge" Defense.*** Defendants would continue

to argue that Lead Plaintiff and various members of the Class had actual knowledge of the alleged untrue statements and omissions at the time they purchased the Certificates and thus could not bring valid claims.  Wales Decl. ¶¶82c.

Several of these contested issues, notably the "negative causation" defense and the "due diligence" defense would ultimately have required expert testimony before the jury.  While Lead Plaintiff expected to present persuasive expert testimony establishing causation and damages and opining that Defendants' investigation was not sufficient, there is little doubt that Defendants would have been able to present well-qualified experts who would support their position.  Defendants, moreover, undoubtedly would assert *Daubert* challenges to each expert.  Assuming that Lead Plaintiff prevailed in such challenges, Lead Plaintiff could not be certain which experts' views would be credited by the jury and who would prevail at trial in this "battle of the experts."  *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *18 ("The jury's verdict . . . would . . . depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable."); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants.").

In light of all these risks of establishing liability and damages, the proposed Settlement is fair, reasonable and adequate.

### 5. The Risks Of Maintaining The Class Action Through Trial Support Approval Of The Settlement

The risks of maintaining the Litigation as a class action through trial also support approval of the Settlement.  Defendants filed a petition pursuant to Fed. R. Civ. P. 23(f), which requested that the Second Circuit review this Court's order granting class certification.  On June 13, 2012, the Second Circuit granted the petition.  The appeal was stayed pending this

Court's consideration of the Settlement.  Had the Settlement not been reached, and the appeal had proceeded, there was a risk that the Class may have been de-certified.  Wales Decl. ¶82d.

### 6. The Ability Of The Defendants To Withstand A Greater Judgment Supports Approval Of The Settlement

Although the Defendants may have been able to pay a judgment in excess of the Settlement Amount, "defendants' ability to withstand a higher judgment . . . standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86; *see also Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 261 (E.D.N.Y. 2009) ("The fact that a defendant is able to pay more [than] it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate."); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair").

The fact that Defendants may have the ability to pay a greater judgment is outweighed here by the other strong considerations favoring the Settlement, most notably, the risks to the Class of establishing liability and damages and maintaining class certification, and the reasonableness of the Settlement Amount in light of those risks.

### 7. The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation Supports Approval Of The Settlement

The last two substantive factors that courts consider are the range of reasonableness of the settlement fund in light of (i) the best possible recovery and (ii) litigation risks.  In analyzing these two factors, the issue for the Court is not whether the Settlement represents the best possible recovery, but how the Settlement relates to the strengths and weaknesses of the case. The court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed

17

settlement is reasonable." *Grinnell*, 495 F.2d at 462.   Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *PaineWebber*, 171 F.R.D. at 130 (citation and internal quotations omitted).   The fact that a proposed settlement "may only amount to a fraction of the potential recovery" does not necessarily suggest that settlement is inadequate.  *Grinnell*, 495 F.2d at 455.   Instead, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d at 693; *see FLAG Telecom*, 2010 WL 4537550, at *20.

The Settlement here is well within the range of reasonableness in light of the substantial risks presented by this Litigation.   This case asserted claims on behalf of investors in a single offering of RMBS, GSAMP 2006 S-2 (the "Offering").   This Offering was for an original principal amount of $698 million in Certificates and was backed by fixed second lien loans from New Century.   As of the date this lawsuit was commenced, investors in the Offering had received principal and interest payments of more than $396 million, based on the loans remaining in the trust there was still outstanding balance of more than $177 million, and the remainder had been written off.[7]

Lead Counsel engaged a consultant to assist in estimating potentially recoverable damages using the statutory measure under § 11 of the Securities Act.   Under § 11, recoverable damages are based on the difference between the purchase price of the security and the value of the security on the date the lawsuit was filed, subject to reduction for "negative causation."   As discussed above, Defendants here contended that any losses were caused by factors other than untrue statements in the Offering Materials, such as the downturn in the economy and the housing market.   Given that the timing of the price declines at issue coincided with the national

---

[7] Wales Decl. ¶80.  *See* Trustee Report dated February 25, 2009.

economic downturn, Defendants' "negative causation" defense was an argument that, at the very least, would have to be resolved through expert testimony at trial.  Lead Plaintiff estimated that damages could range from approximately $320 million, assuming no negative causation, to near zero, assuming Defendants' position on negative causation.  Wales Decl. ¶81.

The proposed settlement here is $26,612,500, for a single RMBS offering.  The settlement range of similar cases on a per offering basis are as follows:  Dynex - $7.5 million; Deutsche Bank - $16.25 million per offering; Lehman - $2.35 million per offering; and Merrill Lynch - $17.5 million per offering.[8]  Lead Plaintiff and Lead Counsel have concluded that, in light of these risks, the Settlement, which provides an immediate and substantial benefit to Class Members, outweighs the benefits of continued litigation.  Wales Decl. ¶70; Neville Decl. ¶¶6, 12.  "Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable.").

Lead Counsel was intimately familiar with the facts in the case and has extensive experience prosecuting comparable securities class actions.  In these circumstances, Lead Counsel's opinion that Settlement is reasonable is entitled to "great weight."  *PaineWebber*, 171 F.R.D. at 125; *see also Veeco,* 2007 WL 4115809, at *12.  The recommendation of Lead Plaintiff, a sophisticated institutional investor, also strongly supports the fairness of the

---

[8] *See In re Dynex Capital Inc. Sec. Litig.*, 05 Civ. 1897 (S.D.N.Y.); *Mass. Bricklayers and Masons Trust Funds, v. Deutsche Alt-A Sec. Inc.,* 08-cv-03178-LDW (E.D.N.Y.); *In re Lehman Brothers Sec. & ERISA Litig.*, 09-MD-2017-LAK (S.D.N.Y.); *In re Merrill Lynch Mortgage-Backed Sec. Litig.*, 08-cv-10841-JSR (S.D.N.Y.).

Settlement.  Representatives of Lead Plaintiff took an active role in supervising this Litigation, as envisioned by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), including participating in settlement negotiations (Neville Decl. ¶2), directly participating in class certification discovery, including sitting for depositions (*id.* ¶¶4-5, 10); and Lead Plaintiff "strongly endorses the Settlement" (*id.* ¶6).  A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'" *Veeco,* 2007 WL 4115809, at *5; *see EVCI,* 2007 WL 2230177, at *4.

In sum, a review of the *Grinnell* factors, including the complexity, expense and delay of further litigation, discovery completed and the stage of the proceedings, and the substantial risks of the Litigation, strongly supports a finding that the Settlement is fair, reasonable and adequate.

## II.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Lead Plaintiff has proposed a plan to allocate the proceeds of the Settlement among Class Members who submit valid Claim Forms that are approved for payment from the Net Settlement Fund ("Authorized Claimants").  The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to those Class Members who suffered economic losses as a result of the alleged misrepresentations and omissions.  *See* Exhibit F to Wales Decl., Declaration of Brett Brandenberg in Support of Plan of Allocation ("Brandenberg Decl.") ¶5.

The Plan of Allocation, set forth in the Notice at pages 6 to 9, allocates the net settlement proceeds based principally on the statutory measure of damages set out in § 11(e) of the Securities Act, 15 U.S.C. § 77k(e).  Lead Plaintiff engaged Brett Brandenberg, a Director at AlixPartners and a Chartered Financial Analyst, to examine the Plan of Allocation.  *See* Brandenberg Decl. ¶3.  Mr. Brandenberg has consulted on the design and analysis of plans of

allocation related to settlements of several other large RMBS class actions, including *In re Merrill Lynch Mortgage-Backed Sec. Litig.,* 08-cv-10841-JSR (S.D.N.Y.); *Mass. Bricklayers and Masons Trust Funds v. Deutsche Alt-A Sec. Inc..,* 08-cv-03178-LDW (E.D.N.Y.) and *In re Wells Fargo Mortgage-Backed Certificates Litig.,* 09-cv-01376-LHK (N.D. Cal.).   In each of these matters, the court has entered orders approving the accompanying plan of allocation and finding the settlement to be fair, reasonable and adequate.  Brandenberg Decl. ¶1.

The Brandenberg Declaration explains the methodology for determining each Authorized Claimant's Recognized Claim under the Plan of Allocation and the basis for the analysis.  An Authorized Claimant's share of the Net Settlement Fund will depend on:  (1) the aggregate number of eligible Goldman Sachs mortgage pass-through certificates (represented by valid and acceptable Claim Forms) that members of the Class submit to the Claims Administrator, relative to the Net Settlement Fund (*i.e.,* their *pro rata* share); and (2) the Authorized Claimant's Recognized Loss or Gain Amount as calculated under the Plan of Allocation.  As explained more fully in the Notice – including through illustrative examples – and in the Brandenberg Declaration, a Recognized Loss or Gain Amount will be calculated for each purchase or acquisition.  The calculation of the Recognized Loss or Gain Amount will depend on several considerations, including:  (1) when the Certificates were purchased or acquired and the price at the time of purchase; (2) any principal payments received; (3) whether the Certificates were sold, and if so, when they were sold and for how much; and/or (4) if held on February 6, 2009 (the date the lawsuit was filed), the value of the Certificates on that date.  Brandenberg Decl. ¶6.

Approval of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate.  *See, e.g., Giant Interactive*, 279 F.R.D. at 166; *AOL Time Warner*, 2006 WL 903236, at *17.  A

plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *FLAG Telecom*, 2010 WL 4537550, at *21 (quoting *Maley,* 186 F. Supp. 2d at 367); *WorldCom*, 388 F. Supp. 2d at 344. In general, courts have recognized that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133. A plan that allocates settlement funds to class members based on the extent of their injuries or the strengths of their claims is fair and reasonable. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strength and values of different categories of claims."); *Am. Bank Note*, 127 F. Supp. 2d at 429 ("Allocation formulas . . . are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim."). Moreover, in assessing a proposed plan of allocation, the Court may give great weight to the opinion of informed counsel. *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *21 (the conclusion of "experienced and competent counsel . . . that the Plan of Allocation is fair and reasonable is . . . entitled to great weight").

The proposed Plan of Allocation in this case is based on the statutory damages permitted under § 11 of the Securities Act and was fully explained in the Notice sent to Class Members. It was prepared in consultation with Lead Plaintiff's consultant and tracks the theory of damages asserted by Lead Plaintiff. Mr. Brandenberg opines that the Plan of Allocation "treats Class Members equitably, when taken as a whole, and in a manner reasonably consistent with my understanding of recoverable losses under Section 11 of the Securities Act as a result of the alleged untrue statements and omissions." *Id.* ¶13. Accordingly, Lead Counsel respectfully submits that the Plan is fair, reasonable and adequate to the Class as a whole. Wales Decl. ¶¶88-92. Moreover, in response to over 2,300 Notices that have been disseminated, there have been

no objections to date to the proposed Plan of Allocation.[9]

Accordingly, for all of the reasons set forth herein, in the Wales Declaration, and in the Brandenberg Declaration, the Plan of Allocation is fair and reasonable, and should be approved.

## III.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable." Fed. R. Civ. P 23(e)(1). Notice of a settlement is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.

Both the substance of the Notice and the method of its dissemination to potential Class Members satisfied these standards. The Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 77z-1(a)(7), including: (i) an explanation of the nature of the Litigation and claims; (ii) the Class definition; (iii) the Settlement amount and structure of the Settlement; (iv) the Plan of Allocation; (v) an explanation of the reasons for the Settlement; (vi) a statement indicating the attorneys' fees and costs that will be sought; (vii) a description of the right to opt-out of the Class or object; and (viii) notice of the binding effect of a judgment.

As noted above, in accordance with the Court's Notice Order, since August 20, 2012, the Claims Administrator has disseminated over 2,300 copies of the Notice to potential Class

---

[9] *Id.* ¶92. In addition, the proposed Plan of Allocation is substantially similar to the plans developed for use, and approved by the respective courts, in the *Merrill Lynch* (S.D.N.Y.) and *Wells Fargo* (N.D. Cal.) RMBS class action settlements.

Members.  Keough Decl. ¶6.  Specifically, GCG disseminated copies of the Notice to 169 persons or entities that had been identified as potential Class Members in connection with the class certification phase of the case.  Keough Decl. ¶2.  The list of potential Class Members was supplemented by mailing to a collection of the largest and most common U.S. nominees (*i.e.*, brokerage firms, banks, and institutions who hold securities in the name of the nominee on behalf of beneficial purchasers).  Keough Decl. ¶¶3-6.  In addition, Lead Plaintiff caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* and copies of the Notice and Claim Form were made available on a dedicated website maintained by GCG and on Lead Counsel's website.  *See* Keough Decl. ¶¶7, 9; Wales Decl. ¶85.

This combination of individual mail to all Class Members who had been identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., FLAG Telecom*, 2010 WL 4537550, at *13; *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing,* 225 F.R.D. at 448-49.

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement as fair, reasonable and adequate and approve the Plan of Allocation as fair and reasonable.

Dated:  October 4, 2012                        BERNSTEIN LITOWITZ BERGER
                                                              & GROSSMANN LLP


                                                      */s/ David Wales*
                                                      DAVID WALES

David Wales
Lauren A. McMillen
Stephen L. Brodsky
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

   -and-

David R. Stickney
Niki Mendoza
12481 High Bluff Drive, Ste. 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Class Counsel and Counsel for Lead Plaintiff and
Class Representative Public Employees'
Retirement System of Mississippi*